**In the Matter of: Glenda Marie MORRELL, Debtor.**

**CALCASIEU MARINE NATIONAL BANK, Appellant,**

v.

**Glenda Marie MORRELL, Appellee.**

No. 88–4642.

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1989.

Mary L. Fullington, Henri Martinez, Wade N. Kelly, Lake Charles, La., Thad D. Minaldi, Sulphur, La., for appellant.

Gerald J. Casey, Morris & Casey, Lake Charles, La., for appellee.

Before CLARK, Chief Judge, and RUBIN and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This is another of the many cases presented to us in which the parties shout "I appeal" before they have established their right to do so. Their mere desire, even when mutually shared, to have a second court review an order is not enough to open the appellate gates. The bankruptcy court judgment appealed from was not final, and we therefore dismiss the appeal.

## I.

Glenda Marie Morrell is a wage earner who is not engaged in business. She filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code attaching a Chapter 13 Plan. The Plan proposed payments to her creditors over a 36–month period, and listed Calcasieu Marine National Bank among the unsecured creditors, each of whom was to be paid approximately 25% of its claim. The Plan stated that the amount due the bank was $450.56. Morrell later amended her Plan to list the bank as a secured creditor, to be paid in full, but only after the events recited below.

On the date of filing Morrell had $606.16 in her checking account at the bank and owed the bank between four and five hundred dollars. To evidence the bank's loan to her, she had given the bank a promissory note that pledged her bank account as security for her indebtedness. In addition, the bank asserts that it had a statutory lien on the account by virtue of Louisiana law.[1] Three days after filing her petition, Morrell deposited her weekly earnings of $400 in the account and she again deposited her $400 paycheck a week thereafter.

In the two weeks after she filed her bankruptcy petition, without requesting permission from the bankruptcy court to use the funds in her account, Morrell drew checks on the account totaling at least $609.88. These checks therefore exhausted the $606.16 balance that was in her account at the time she filed her bankruptcy petition. On the day the bank learned of Morrell's bankruptcy filing, her account had a net balance of $503.40, which had accrued solely by virtue of her postpetition deposits. The bank immediately placed an "administrative freeze" on $437.52 of the funds in the account, sending Morrell a certified letter to advise her of this action.

The bankruptcy court that initially considered this case held that the bank had violated the automatic stay of the Bankruptcy Code[2] by imposing the administrative freeze on Morell's bank account. The court ordered the bank to turn over Morrell's funds, and, in response to Morrell's motion for "damages, including costs and attorney's fees, and punitive damages under 11 U.S.C. 362(h)," ordered the bank to reimburse her for the $130 in charges she had incurred because the bank had refused to honor her checks. The court also ruled orally:

> The other matters sought in the motion by the debtor for contempt, damages, costs and attorney's fees, are in my view ... probably the province of an adversary proceeding. So, the court is not going to rule on those matters, in—at this time. But the bank is found to be in contempt of the automatic stay, and ... [t]he order of contempt will be effective ten days after the service thereof.

The district court affirmed the order of the bankruptcy court in all respects.

## II.

The Supreme Court has stated that "where assessment of damages or awarding of other relief remains to be resolved [judgments] have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291."[3] The concept of finality employed to determine appealability under the Bankruptcy Code is "open to a more liberal interpretation" than that applicable to civil litigation governed by 28 U.S.C. § 1291,[4] but this liberality stems from practicality, and is limited by it in turn.[5] Determinations of liability without an assessment of damages are as likely to cause duplicative litigation in bankruptcy as they are in civil

---

**1.** *See* L.S.A.–R.S. 6:316.

**2.** 11 U.S.C. § 362.

**3.** *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). *See also, e.g., Garzaro v. University of Puerto Rico,* 575 F.2d 335, 337 (1st Cir.1978); *Laclede Gas Co. v. Amoco Oil Co.,* 531 F.2d 942, 943 (8th Cir.1976).

**4.** 1 Collier on Bankruptcy § 3.03[6][b] at 3–181 (1989).

**5.** *See, e.g., In re Jeannette Corp.,* 832 F.2d 43, 46 (3d Cir.1987); *In re Brown,* 803 F.2d 120 (3d Cir.1986).

litigation, and because bankruptcy litigants may appeal to district as well as to appellate courts, the waste of judicial resources is likely to be greater. The rule for appeals from bankruptcy decisions determining liability but not damages under 28 U.S.C. § 158(d) must therefore be the same as the rule under § 1291.[6] We hold that the district court lacked jurisdiction to hear an appeal from the bankruptcy court's order, and because the district court lacked jurisdiction, we do also. Accordingly, we dismiss the appeal.

The facts we have recited have been gleaned from a record that may be supplemented on remand.

### III.

For the foregoing reasons, the appeal is DISMISSED.

6. *Cf. Jeannette,* 832 F.2d at 46; *Brown,* 803 F.2d at 120.