937 F.2d 833
 60 USLW 2091, 25 Collier Bankr.Cas.2d 75,
Bankr. L. Rep. P 74,061
 In re HOOKER INVESTMENTS, INC., L.J. Hooker Corporation,
Inc., et al., Debtors.
FIRST FIDELITY BANK, N.A., NEW JERSEY, Appellant,
v.
HOOKER INVESTMENTS, INC., L.J. Hooker Corporation, Inc., et
al., Appellees.
 No. 1677, Docket 91-5016.
 United States Court of Appeals,
Second Circuit.
 Argued June 10, 1991.
Decided June 28, 1991.
 
 Allan L. Gropper, New York City (White & Case, P.B. Konrad Knake, Robert L. Skinner, of counsel), for appellant.
 Steven J. Stein, New York City (Proskauer Rose Goetz & Mendelsohn, Tod S. Chasin, of counsel), for debtors-appellees.
 Before FEINBERG, NEWMAN and WINTER, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 First Fidelity Bank, N.A., New Jersey (the Bank) appeals from an order entered in the jointly administered bankruptcy cases of appellees L.J. Hooker Corporation, Inc. and many of its United States subsidiaries (collectively, the Debtors). The order was issued by the United States Bankruptcy Court for the Southern District of New York, Tina L. Brozman, J., and affirmed by the United States District Court for the Southern District of New York, Leonard B. Sand, J. The order fixed a date by which creditors were required to file proofs of claim against the Debtors' bankruptcy estate. The Bank claims that the bankruptcy court should have granted its request for an individual extension of the date in order to preserve the Bank's seventh amendment right to a jury trial in a pending adversary proceeding brought against it by the Debtors. For the reasons set forth below we dismiss the appeal for lack of appellate jurisdiction, treat the attempted appeal as a petition for a writ of mandamus, entertain the petition to consider the merits and after consideration deny the relief sought.
 
 Background
 
 2
 Beginning on August 9, 1989, the Debtors filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 1101 et seq. The Debtors, who include B. Altman & Co. and Bonwit Teller, Inc., are a large and complex conglomerate primarily engaged in the business of operating, developing and managing residential and commercial real estate and retail department store chains in the United States. The bankruptcy court authorized the joint administration of the Debtors' estates, which the Debtors assert involve assets and liabilities in excess of $1 billion. The Debtors continued to operate their businesses as debtors-in-possession.
 
 
 3
 In February 1990, some of the Debtors brought an adversary proceeding against the Bank in the bankruptcy court, asserting, among other things, that the Debtors were entitled under the Bankruptcy Code to recover various payments and transfers of security interests made by the Debtors to the Bank because the transactions constituted preferential transfers or fraudulent conveyances. Early in the following month, the Debtors filed schedules of assets and liabilities. The Bank's claims against the Debtors, which according to the Bank total more than $45 million, were listed as disputed, contingent and unliquidated. Shortly thereafter, the Debtors moved for issuance of a bar order, that is, an order of the bankruptcy court pursuant to Bankruptcy Rule 3003(c)(3), which provides that the bankruptcy court "shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed."
 
 
 4
 Not every creditor in a Chapter 11 case is required to file a proof of claim. A proof of claim is deemed filed for any liability listed on the debtor's schedule of liabilities, eliminating the necessity for a separate filing by the creditor. However, the "deemed filed" rule does not apply when the debtor designates a listed liability as "disputed, contingent, or unliquidated." 11 U.S.C. Sec. 1111(a); Bankruptcy Rule 3003(b)(1). A creditor whose claim is so designated who fails to file a proof of claim "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." Bankruptcy Rule 3003(c)(2). Thus, failure to file a proof of claim by the bar order date can bar a creditor from sharing in the distribution of the bankruptcy estate.
 
 
 5
 Since the Bank's claims were listed on the Debtors' schedules as disputed, contingent and unliquidated, the bar order was of major consequence to the Bank. However, the Bank was concerned that under Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), filing a proof of claim would mean loss of the Bank's right to a jury trial in the adversary proceeding pending against it. Because of this concern, the Bank filed a "limited" objection to the Debtors' application for a bar order, requesting that it be modified to allow the Bank to file a proof of claim after the conclusion of the adversary proceeding.
 
 
 6
 At a hearing in early April 1990, the bankruptcy court rejected the Bank's objection, stating:
 
 
 7
 I am going to deny your application to be carved out of the Bar Order.
 
 
 8
 I think it sets a very dangerous precedent, it would require me in the future to ... draft Bar Orders in such a way that I preserve rights for anybody who felt that they might have a problem that they would be prejudicing themselves with by filing a Proof of Claim and I am simply unwilling to do that.
 
 
 9
 The bankruptcy court entered an order fixing a bar date of June 29, 1990, which was later changed to July 17, 1990. The Bank filed a notice of appeal to the district court, and the Debtors moved to dismiss the appeal on the ground that the bar order was not an appealable final order.
 
 
 10
 While the Bank's appeal was pending, the bankruptcy court, on agreement of the parties, entered a limited stay of the order. The stay provided that the Bank would furnish the Debtors with its proofs of claim, which would not be filed until the bar order had been finally affirmed on appeal or the adversary proceeding against the Bank had been finally determined. The stay also provided that if the proofs of claim were filed in accordance with these provisions, they would be considered to have been filed with the bankruptcy court as of the amended bar date.
 
 
 11
 In January 1991, in an opinion reported at 122 B.R. 659, the district court held that the bar order was not a final order appealable to the district court as of right. Pursuant to Bankruptcy Rule 8003(c), however, the court treated the appeal as a motion for leave to appeal an interlocutory order, then granted leave to appeal because the question of law presented was substantial and unsettled and an immediate appeal would materially advance the progress of the bankruptcy case. On the merits, the district court held that the bankruptcy court had not abused its discretion in rejecting the Bank's objection, and affirmed the bar order.
 
 
 12
 The Bank now appeals to this court. The Debtors moved to dismiss the appeal for lack of jurisdiction on the ground that the order appealed from was not final, and a panel of this court referred the motion to the panel hearing the appeal, in accordance with the procedure set forth in BancTexas Dallas, N.A. v. Chateaugay Corp. (In re Chateaugay Corp.), 876 F.2d 8, 9 (2d Cir.1989) (per curiam).
 
 Discussion
 Jurisdiction
 
 13
 Bankruptcy court rulings are appealable to the district courts pursuant to 28 U.S.C. Sec. 158(a), which gives the district court jurisdiction to review both final determinations, and, with leave, interlocutory orders of the bankruptcy court. Section 158(d) of Title 28 gives courts of appeals authority to review district court orders resulting from the review of bankruptcy court rulings. That section, however, gives courts of appeals jurisdiction of appeals only from "final decisions, judgments, orders, and decrees" (emphasis added) entered by the district court pursuant to Sec. 158(a) and provides no statutory authority for review by a court of appeals of interlocutory decisions originating in the bankruptcy court. Moreover, we have recently held that Sec. 158(d) also precludes appellate jurisdiction over such decisions under 28 U.S.C. Sec. 1292(b). Germain v. Connecticut National Bank, 926 F.2d 191 (2d Cir.1991). As a consequence, there is "no court of appeals jurisdiction over non-final orders originating in the bankruptcy court." Lomas Financial Corp. v. Northern Trust Co. (In re Lomas Financial Corp.), 932 F.2d 147, 150 (2d Cir.1991).
 
 
 14
 Appellant Bank acknowledges these limitations on our jurisdiction, but contends that the decision below was final for purposes of permitting an appeal under Sec. 158(d). It is true, as the Bank asserts, that "[b]ecause bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation." BancTexas Dallas, N.A. v. Chateaugay Corp. (In re Chateaugay Corp.), 880 F.2d 1509, 1511 (2d Cir.1989); see also, e.g., Consumer News & Business Channel Partnership v. Dow Jones/Group W Television Co. (In re Financial News Network, Inc.), 931 F.2d 217, 220 (2d Cir.1991). Despite this flexibility in bankruptcy cases, however, orders are appealable as final only if they "finally dispose of discrete disputes within the larger case." BancTexas Dallas, N.A., 880 F.2d at 1511 (citation and emphasis omitted); see also, e.g., Consumer News & Business Channel Partnership, 931 F.2d at 220. Moreover, "a district court decision is not 'final' for purposes of our jurisdiction when the underlying bankruptcy court decision is interlocutory and appeal to the district court is taken under the 'with leave' provision of section 158(a)." Bowers v. Connecticut National Bank, 847 F.2d 1019, 1021-22 (2d Cir.1988). Thus, unless the district court erred in determining that the bankruptcy court's bar order was interlocutory, we do not have jurisdiction over the Bank's appeal.
 
 
 15
 On its face, the bar order merely set the date by which creditors were required to file proofs of claim in order to participate in the distribution of the bankruptcy estate, an administrative procedure that would not appear to resolve any particular dispute. As the district court explained, "The issuance of a bar date order is a largely ministerial act designed to bring to light all claims against the estate; the order resolves no claim by or against the debtor, nor does it have any direct effect on the disposition of the assets of the estate." 122 B.R. at 662. The Bank apparently does not challenge this statement as a general matter or claim that a bar order in itself constitutes an appealable final order. Instead, the Bank argues that by issuing the bar order the bankruptcy court in effect denied the Bank's request for an extension of the bar date, and it is the denial of this request that constitutes a final disposition of a discrete dispute within the larger case. The Bank's argument for finality is that the refusal to extend the bar date put the Bank to an important final choice: either file a proof of claim and lose its right to a jury trial in the adversary proceeding or forgo filing a proof of claim and preserve its right to a jury trial but risk the loss of its right to participate in the distribution of the bankruptcy estate.
 
 
 16
 The principal problem with this argument is that, even accepting the premise that the bar order forced such a choice, the order did not finally resolve either the Bank's right to participate in the distribution of the estate or any discrete dispute in the adversary proceeding. At most, the bar order requires the Bank to choose whether or not to file a proof of claim before the bar date, a choice faced by many, if not most, creditors. Presenting a creditor with the choice of asserting or forgoing assertion of a claim cannot be said to constitute a final determination.
 
 
 17
 Even if, as the Bank contends, its choice to file a claim would have the collateral effect of eliminating its right to a jury trial, that collateral consequence would not transform the order under attack into a final determination. We have previously observed that a wide range of interlocutory orders may have the incidental effect of precluding a jury determination of particular issues at a subsequent trial, but this possibility is insufficient to make such orders immediately appealable. Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 651 & n. 4 (2d Cir.1987). In addition, a determination that a litigant is or is not entitled to a jury trial generally is not itself immediately appealable as a final order because it merely prescribes the method of fact-finding to be applied to the underlying dispute; it obviously does not dispose of the dispute. See City of Morgantown v. Royal Insurance Co., 337 U.S. 254, 256, 69 S.Ct. 1067, 1069, 93 L.Ed. 1347 (1949); see also Germain v. Connecticut National Bank, 930 F.2d 1038, 1039 (2d Cir.1991). Moreover, a ruling on a litigant's entitlement to a jury trial is not appealable under the collateral order doctrine, a judicially created exception to the finality requirement. The collateral order exception requires, among other things, that the order appealed from be effectively unreviewable on final appeal, but "[a] ruling as to whether or not there will be a jury trial ... is entirely reviewable on appeal from the final judgment." Germain, 930 F.2d at 1040. Thus, we do not have jurisdiction over the Bank's appeal.
 
 Mandamus
 
 18
 Although we do not have jurisdiction over the Bank's attempted appeal as a matter of right from the non-final bar order, we may in appropriate circumstances treat an unsuccessful attempt to appeal as a petition for a writ of mandamus. See, e.g., Richardson Greenshields Securities, Inc., 825 F.2d at 652. Indeed, the Bank has asked us to review the bar order under our mandamus power if we should find ourselves to be without statutory appellate jurisdiction. The Bank claims that the bar order threatens its seventh amendment right to a trial by jury in the adversary proceeding, and there is a clear line of cases holding that when an otherwise unappealable order denies a claimed right to a jury trial, immediate review may be obtained by way of a petition for mandamus. See, e.g., Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472, 82 S.Ct. 894, 897, 8 L.Ed.2d 44 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959); Higgins v. Boeing Co., 526 F.2d 1004, 1006 (2d Cir.1975) (per curiam). We see no reason not to follow this practice in the bankruptcy context. See Kaiser Steel Corp. v. Frates (In re Kaiser Steel Corp.), 911 F.2d 380, 387-88 (10th Cir.1990). Though we believe that mandamus should be used sparingly, it is justified in this case. We therefore treat the Bank's appeal as a petition for a writ of mandamus and turn to the merits of its claim.
 
 Merits
 
 19
 In an action to recover a monetary preference or fraudulent conveyance (collectively "preference"), the seventh amendment right to a jury trial depends on whether the person against whom the action is brought has submitted a claim against the bankruptcy estate. Langenkamp v. Culp, --- U.S. ----, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (per curiam). As the Supreme Court has explained, by filing a claim against the estate a creditor triggers the process of allowance and disallowance of claims, and the Debtors' preference action against the creditor becomes part of the claims-allowance process. This process is integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction, which the creditor has invoked by filing the claim, and the preference action is therefore triable only in equity. Id.; see also Granfinanciera, 492 U.S. at 57-59 & n. 14, 109 S.Ct. at 2798-2800 & n. 14 (citing Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)). However, when no claim against the estate is filed, an action to recover a monetary preference is essentially a legal one, and the seventh amendment requires that the defendant be afforded a jury trial. Langenkamp, 111 S.Ct. at 331; Granfinanciera, 492 U.S. at 58-59, 109 S.Ct. at 2799-2800.
 
 
 20
 The Bank asserts that if it files a proof of claim, under Langenkamp and Granfinanciera it will lose whatever right it may have had to a jury trial in the adversary proceeding against it. The Bank also asserts that the seventh amendment right to a jury trial is a fundamental and important one, and that "any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Beacon Theatres, Inc., 359 U.S. at 501, 79 S.Ct. at 952 (citation omitted). We have no quarrel with either of these propositions.
 
 
 21
 The Bank goes on to argue, however, that the bankruptcy court should have preserved its right to a jury trial in the adversary proceeding by allowing it to postpone filing a proof of claim until the adversary proceeding had concluded. The Bank maintains that the amount of its claim against the estate will not be finally determined in any event until the conclusion of the adversary proceeding. Until that time, any information necessary for the orderly administration of the bankruptcy estate and the formulation of a plan of reorganization could be obtained, the Bank argues, by a bankruptcy court order, similar to the stay pending appeal entered in this case, requiring the creditor to irrevocably set forth its claims in the form of a proof of claim, but postponing the filing of the proof of claim until the adversary proceeding has been resolved. The Bank contends that it was an abuse of discretion for the bankruptcy court to refuse to adopt this or some similar method of preserving the Bank's right to a jury trial while accommodating the needs of estate administration. We disagree.
 
 
 22
 The Bank's argument ignores the fundamental principle underlying the Supreme Court's decisions in Langenkamp and Granfinanciera, which is that filing a proof of claim is not merely a means of providing information to the bankruptcy court, but is a means of invoking the bankruptcy court's equitable jurisdiction over the bankruptcy estate to establish the creditor's right to participate in the distribution of the estate. Langenkamp, 111 S.Ct. at 331; Granfinanciera, 492 U.S. at 59 n. 14, 109 S.Ct. at 2799 n. 14. By seeking to preserve both its ability to file a proof of claim and its right to a jury trial, the Bank wants to invoke the bankruptcy court's equitable jurisdiction so that it may share in the distribution of Debtors' bankruptcy estate, but avoid the bankruptcy court's equitable jurisdiction so that the Bank can obtain a jury trial in the adversary proceeding. The Bank offers no basis, however, for disregarding the general rule of Langenkamp and Granfinanciera that a creditor who invokes the bankruptcy court's equitable jurisdiction to establish a claim against a debtor's estate is also subject to the procedures of equity in the determination of preference actions brought on behalf of the estate.
 
 
 23
 The Bank suggests that the choice it must make between filing a proof of claim and preserving its right to a jury trial presents a new consideration in bankruptcy cases arising out of the recent Langenkamp and Granfinanciera decisions. However, although Granfinanciera is principally concerned with the effect on jury trial rights of the 1984 amendments to the Bankruptcy Code, 492 U.S. at 50, 109 S.Ct. at 2795, the Court in Granfinanciera stated that its holding was supported by longstanding precedent regarding the right to a jury trial in adversary proceedings under an earlier bankruptcy statute, id. at 57-59 & n. 14, 109 S.Ct. at 2798-2800 & n. 14. As early as 1966, the Court had stated that " 'although [the creditor] might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee, Schoenthal v. Irving Trust Co., 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 [1932], when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity.' " Katchen, 382 U.S. at 336, 86 S.Ct. at 476, quoted in Granfinanciera, 492 U.S. at 58, 109 S.Ct. at 2799.
 
 
 24
 In the portion of the Katchen decision quoted in Granfinanciera, the Court rejected a creditor's argument that allowing the bankruptcy court to summarily determine the bankruptcy trustee's preference claims against him wrongfully deprived him of his seventh amendment right to a jury trial, principally on the basis that the bankruptcy court's determination was an exercise of the court's equitable jurisdiction. Katchen, 382 U.S. at 335-37, 86 S.Ct. at 475-77. The creditor in Katchen also argued, however, that because the preference issue could have been presented as a legal issue in a plenary suit by the trustee rather than as an equitable issue in the bankruptcy proceeding, the bankruptcy court should have stayed its proceedings and directed the trustee to commence a plenary suit in order to preserve the creditor's right to a jury trial in the preference action. Katchen, 382 U.S. at 338, 86 S.Ct. at 477. The latter argument seems to us to be essentially similar to the Bank's argument that the bankruptcy court in this case should have stayed its bar order to allow the Bank to preserve its right to a jury trial in the adversary proceeding. The Katchen Court rejected the creditor's argument, for reasons that seem to us to be informative in the present case.
 
 
 25
 The creditor in Katchen based his argument on the doctrine that "where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims,' " citing Dairy Queen, Inc., 369 U.S. at 472-73, 82 S.Ct. at 896-97 (quoting Beacon Theatres, Inc., 359 U.S. at 510-11, 79 S.Ct. at 956-57). See Katchen, 382 U.S. at 338, 86 S.Ct. at 477. The Court observed that accepting the creditor's argument would force the bankruptcy court to suspend its claims-allowance proceedings whenever a preference claim was asserted against a creditor, a result that would undermine the statutory bankruptcy scheme. The Court ruled that effectuating the equitable purposes of bankruptcy adjudication was the type of circumstance contemplated by Dairy Queen, Inc. and Beacon Theatres, Inc., in which the bankruptcy court could proceed to resolve the equitable claims presented to it, even if their determination would be dispositive of what would otherwise be a legal claim. Katchen, 382 U.S. at 339-40, 86 S.Ct. at 478.
 
 
 26
 Accepting the Bank's argument here would require a bankruptcy court to stay the effect of its bar order to preserve the jury-trial rights of any creditor from whom a debtor or trustee sought to recover preferences. It is also likely that in many instances creditors could not ascertain before the bar date whether the debtor or trustee intended to assert such claims, and that these creditors, too, would seek to stay the effect of the bar order to preserve their jury-trial rights in the event such claims were asserted. As the bankruptcy court observed, requiring that a bar order be drafted in such a way that it would "preserve rights for anybody who felt that they might ... be prejudicing themselves ... by filing a Proof of Claim" would "set[ ] a very dangerous precedent."
 
 
 27
 Moreover, we have little doubt that such a "dangerous precedent" would, as the Katchen Court observed in an analogous situation, "dismember a scheme which Congress has prescribed," 382 U.S. at 339, 86 S.Ct. at 478. A bar order serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization. To be sure, the amount of the claims may not be finally determined until adversary proceedings have been concluded, but establishing the identities and interests of the participants so that the claims-allowance process may begin is an essential function served by a bar order. See, e.g., United States v. Kolstad (In re Kolstad), 928 F.2d 171, 173-74 (5th Cir.1991); In re STN Enterprises, Inc., 99 B.R. 218, 220 (D.Vt.1989). Thus, a bar order does not "function merely as a procedural gauntlet," Kolstad, 928 F.2d at 173, but as an integral part of the reorganization process. If individual creditors were permitted to postpone indefinitely the effect of a bar order so long as adversary proceedings were pending, the institutional means of ensuring the sound administration of the bankruptcy estate would be undermined.
 
 
 28
 Indeed, so important are the interests served by the bar order that, as stated above, a creditor who fails to file a proof of claim by the bar date may be entirely barred from sharing in the distribution of the bankruptcy estate. Bankruptcy Rule 3003(c)(2). If that is so, observance of a bar date clearly may be required even if it alters the method of fact-finding on the merits of the claim by limiting the availability of a jury trial.
 
 
 29
 We have considered all of the Bank's arguments, and for the reasons stated above we dismiss the appeal for lack of appellate jurisdiction, treat the attempted appeal as a petition for a writ of mandamus, entertain the petition to consider the merits and after consideration deny relief.