KEARSE, Circuit Judge:
Defendants William D. Fugazy (“William Fugazy” or “William”), Fugazy Limousine Limited (“Limousine”), and Roy D. Fugazy (“Roy Fugazy” or “Roy”) (collectively the “Fugazy Parties”) appeal from an order entered in the United States District Court for the Southern District of New York, Kevin Thomas Duffy, Judge, affirming an order of the United States Bankruptcy Court for the Southern District of New York, Burton R. Lifland, Chief Judge, which, inter alia, (1) ruled that William Fugazy had improperly transferred a broadcast license that was property of the estate of bankruptcy Chapter 7 debtor Fugazy Express, Inc. (“Debtor”), to Limousine and Roy Fugazy, and (2) ordered the payment of damages, to be determined after an accounting, and attorneys’ fees to plaintiffs-appellees Zachary Shimer, who is *772 the Chapter 7 trustee of the Debtor (“Trustee”), and Metromedia Company ("Metromedia”). Resolution of the damages and fees issues has been stayed by the bankruptcy court pending the outcome of this appeal. On appeal, the Fugazy Parties contend that these orders should be reversed on the ground that the license was not properly regarded as property of the Debtor’s estate and that its transfer was properly approved by the pertinent regulatory authority. For the reasons below, we conclude that the order of the bankruptcy court was not a final order within the meaning of 28 U.S.C. § 158(a) (1988), that the order of the district court is therefore not sufficiently final to be appeal-able under 28 U.S.C. § 158(d) (1988) or 28 U.S.C. § 1291 (1988), and that the orders are not injunctive orders appealable under 28 U.S.C. § 1292(a)(1) (1988). Accordingly, we dismiss the appeal for lack of appellate jurisdiction.
I. BACKGROUND
Prior to July 1986, the Debtor was engaged in the business of selling and servicing franchises for livery and limousine services to independent limousine operators who conducted their operations using the “Fugazy” name. William Fugazy was chairman of the Debtor’s board of directors. Roy, William’s son, was formerly the Debtor’s vice president for marketing and is the controlling shareholder of Limousine.
A. The Events
Pursuant to its franchise agreements, the Debtor provided radio dispatching services for its franchisees. The dispatches were broadcast over several radio frequencies, for which the Debtor had obtained six licenses and permits from the Federal Communications Commission (“FCC”). In July 1986, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (“Code”), 11 U.S.C. § 101 et seq. (1988), see id. §§ 1101-1174. In or about January 1987, William caused the Debtor to transfer its FCC license for the call sign KXY-610 and two specified frequencies (“KXY License” or “License”) to Limousine without consideration. Limousine applied to the FCC for, and in April 1987 received, approval of the transfer. The bankruptcy court had neither been asked to approve, nor been informed of, the transfer; the FCC had not been informed of the Debtor’s filing for bankruptcy.
In the meantime, in March 1987, the bankruptcy court entered an order converting the reorganization proceeding into one for liquidation under Chapter 7 of the Code, 11 U.S.C. §§ 701-766, and promptly appointed the Trustee to oversee the liquidation. In June 1987, a court-authorized auction was held, following which the Trustee sold and transferred all right, title, and interest in the Debtor’s six FCC licenses, including the KXY License, to Metromedia.
Metromedia soon discovered William’s purported prior transfer of the KXY License to Limousine, and in August 1987, the Trustee and Metromedia commenced the present adversarial proceeding against the Fugazy Parties, seeking, inter alia, a declaration that the purported transfer was null and void because it had occurred without the permission of the bankruptcy court, and an accounting.
William conceded that in making the transfer he had acted without authority. On the basis of this concession, the bankruptcy court promptly entered an order in September 1987, which was consented to by William, the Trustee, and Metromedia (“Consent Order”), declaring the assignment null and void and directing the Trustee to convey the License to Metromedia. William and Metromedia were also directed to send a copy of the Consent Order to the FCC and to take whatever actions were requested by the FCC to effectuate the order’s provisions. Counsel for Limousine and Roy Fugazy were present at all hearings relevant to the Consent Order. Immediately following entry of the order, Metromedia applied to the FCC to void the unauthorized assignment of the KXY License. Limousine opposed the application, and the FCC granted Limousine temporary *773 authorization to use the License pending resolution of the dispute.
In a letter dated October 26, 1988, the FCC refused to act on Metromedia’s request that the purported transfer to Limousine be voided, stating in pertinent part as follows:
While the rights and obligations of the various parties vis-a-vis each other may be somewhat complex, their obligations to the Commission are quite simple. Fugazy Express, Inc., licensee of record, assigned the license for KXY-610 to R.D.F. Limousine, who then became the licensee of record for our purposes. Information submitted to us, the Consent Order of the Bankruptcy Court in particular, casts doubt upon the validity of this transaction, and would under other circumstances require an administrative inquiry on our part. Here, however, the particular facts before us make such action unnecessary.
Affidavits submitted with the pleadings establish that KXY-610 ceased operations in December, 1986. Under Section 90.157 of our Rules, 47 C.F.R. § 90.157, the license for KXY-610 has therefore cancelled and must be returned to the Commission.
Though the FCC letter did not state specifically as of what date the KXY License had been cancelled, the cited regulation provided that for purposes of return of licenses to the Commission, a broadcast station is considered to have been permanently discontinued if it “has not operated for 1 year or more.” 47 C.F.R. § 90.157(c). It is undisputed that Limousine used the frequencies covered by the KXY License at least from the time of the unauthorized assignment until December 1, 1988, when Limousine obtained a new license from the FCC to use those frequencies under a new call sign.
B. The Decisions Below
In early 1989, Limousine and Roy moved for summary judgment dismissing the present action, asserting that the FCC had “cancelled” the License prior to January 1987 and arguing that thereafter the License was not property that could be deemed part of the bankruptcy estate, and hence the bankruptcy court had no jurisdiction over William’s transfer to Roy. William joined the motion. The Trustee and Metromedia cross-moved for summary judgment and sought sanctions against all the Fugazy Parties. In a Memorandum Decision dated May 14, 1990 (“Memorandum Decision”), the bankruptcy court granted the motion of the Trustee and Metromedia and denied the motions of the Fugazy Parties. The bankruptcy court held (1) that the KXY License was property of the Debtor’s estate within the meaning of § 541(a)(6) of the Code, 11 U.S.C. § 541(a)(6); (2) that the assignment of the Debtor’s interest in the KXY License by William to Roy and Limousine constituted an improper postpetition transfer of estate property, in violation of § 549 of the Code, 11 U.S.C. § 549; (3) that the assignment of the Debtor’s interest in the KXY License was “a less than arms-length transaction” by William in “connivance” with Roy, and constituted “serious misconduct” “in direct, willful contravention” of the automatic stay, in violation of § 362(a)(3) of the Code, 11 U.S.C. § 362(a)(3); (4) that the cancellation of the KXY License by the FCC had no effect on this proceeding; and (5) that pursuant to §§ 549, 550, and 362(h) of the Code, 11 U.S.C. §§ 549, 550, and 362(h), the Trustee and Metromedia were entitled to recover damages, costs, and attorneys’ fees from Limousine and Roy, and the Trustee was entitled to recover attorneys’ fees from William.
In accordance with its rulings, the bankruptcy court entered an order dated June 20, 1990 (“1990 Bankruptcy Court Order” or “Order”) directing, inter alia, that there be an accounting with respect to the revenues received by Limousine with respect to its use of the KXY License:
Ordered that Limousine shall, within fifteen (15) of [sic] service of Notice of Entry of this Order, file with the Court and serve the Trustee and counsel for Metromedia, with an accounting setting forth the revenues received by Limousine, its predecessors and successors, attributable to use of the License, which *774 accounting shall specify the revenues received by Limousine and its predecessors and successors for the period of January 28, 1987 through June 18, 1987, and for the period of June 19, 1987 through the date of entry of this Order; and it is further
Ordered that Metromedia and the Trustee each shall within fifteen (15) days of service of Notice of Entry of this Order file with the Court and serve counsel for Limousine, Roy Fugazy and William Fugazy with a statement of attorney’s fees and expenses incurred in connection with the claims asserted in the written adversary proceeding; and it is further
Ordered that objections, if any, to the accounting to be filed and served by Limousine and the statements of attorneys fees and expenses to be filed and served by the Trustee and Metromedia shall (i) be filed with the Court and served upon all counsel within thirty (30) days of receipt of such information, and (ii) shall be scheduled for a hearing by the parties as soon as practicable; and it is further
Ordered that within fifteen (15) days after the later of (i) receipt of the respective submissions by Limousine, Metromedia and the Trustee, or (ii) resolution of any objections to the respective submissions by Limousine, Metromedia and the Trustee, the parties shall submit proposed orders and judgments consistent with the terms of the Memorandum Decision and this Order.
1990 Bankruptcy Court Order at 4-6. Though the parties have made submissions to the bankruptcy court in accordance with the Order, their time within which to file objections to the submissions has been stayed at the request of the Fugazy Parties.
The Fugazy Parties appealed the 1990 Bankruptcy Court Order to the district court pursuant to 28 U.S.C. § 158(a). They principally challenged the bankruptcy court’s findings that the KXY License was property of the Debtor’s estate and that the cancellation of the KXY License by the FCC was of no effect in this proceeding. In a Memorandum and Order dated February 25, 1991, the district court rejected these arguments and affirmed the Order in all respects, 124 B.R. 426. This appeal followed.
Metromedia moved before a motions panel of this Court to dismiss the appeal for lack of appellate jurisdiction. That motion was denied without prejudice to renewal before the panel to hear the appeal.
II. DISCUSSION
On this appeal, the Fugazy Parties pursue the arguments they made to the district court. Metromedia, in addition to defending the decision below on the merits, renews its contention that there is no final order in this case and that this Court therefore lacks appellate jurisdiction.
When the district court has ruled on a bankruptcy matter as an appellate court pursuant to § 158(a), the court of appeals has jurisdiction to review the district court’s decision if the case meets the requirements of either 28 U.S.C. § 158(d) or 28 U.S.C. § 1292. See Connecticut National Bank v. Germain, — U.S. —, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). The Fugazy Parties contend that their appeal meets both standards because the 1990 Bankruptcy Court Order is a final order within the meaning of § 158, and because the Order is an interlocutory refusal to modify an injunction within the meaning of § 1292(a) as, in effect, a refusal to lift the automatic bankruptcy stay imposed by 11 U.S.C. § 362. We have considered all of the Fugazy Parties’ arguments in support of appellate jurisdiction and, for the reasons below, we conclude that neither of these provisions is applicable and that we lack jurisdiction to decide the present appeal.
A. The Finality Contention
1. Section 158(d)
Section 158(d) provides in pertinent part that “[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees” entered by the district courts under *775 § 158(a). 28 U.S.C. § 158(d). By its terms, therefore, § 158(d) confers appellate jurisdiction only over a district court order that is “final.” See In re Hooker Investments, Inc., 937 F.2d 833, 836 (2d Cir.1991); In re Lomas Financial Corp., 932 F.2d 147, 150 (2d Cir.1991). The district court itself, in contrast, has jurisdiction to hear bankruptcy appeals not only from orders that are final but also from orders that are nonfinal, so long as an appeal from the latter is taken “with leave of” the district court. 28 U.S.C. § 158(a). The district court’s own decision of an appeal from the bankruptcy court is not a final decision for purposes of appeal to the court of appeals unless the order of the bankruptcy court was final. See, e.g., In re Hooker Investments, Inc., 937 F.2d at 836 (“ ‘district court decision is not “final” for purposes of our jurisdiction when the underlying bankruptcy court decision is interlocutory and appeal to the district court is taken under the "with leave” provision of section 158(a)’ ”) (quoting Bowers v. Connecticut National Bank, 847 F.2d 1019, 1021-22 (2d Cir.1988)).
In the present case, the district court noted its jurisdiction over the 1990 Bankruptcy Court Order under § 158(a), but it did not specify whether it viewed that Order as final or interlocutory. Thus, in order to determine whether the order of the district court was final, the above principles require this Court to determine whether or not the 1990 Bankruptcy Court Order was final.
For purposes of appealability outside of the bankruptcy context, a final order is one that conclusively determines the rights of the parties to the litigation, leaving nothing for the district court to do but execute the order. See, e.g., Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978). An order granting summary judgment on the issue of liability, but requiring a calculation of damages, is not an appealable final order. See, e.g., Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976). Similarly, an order determining liability but directing that an accounting be held is not final until after the accounting has been completed. See, e.g., ARP Films, Inc. v. Marvel Entertainment Group, Inc., 905 F.2d 687 (2d Cir.1990) (per curiam); 15B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3915.2, at 271-73 (1992). Moreover, an order finding a party in contempt is not final until after the sanction has been determined. See, e.g., Dove v. Atlantic Capital Corp., 963 F.2d 15, 17 (2d Cir.1992); Weyerhaeuser Co. v. International Longshoremen’s and Warehousemen’s Union, Local 21, 733 F.2d 645 (9th Cir.1984); 15B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3917, at 377-79 (1992).
In bankruptcy proceedings, the context of the determination of finality is different. “ ‘[Bjecause bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation.’ ” In re Hooker Investments, Inc., 937 F.2d at 836 (quoting In re Chateaugay Corp., 880 F.2d 1509, 1511 (2d Cir.1989)). “We have thus recognized that Congress intended to allow for immediate appeal in bankruptcy cases of orders that ‘finally dispose of discrete disputes within the larger case.’ ” In re Sonnax Industries, Inc., 907 F.2d 1280, 1283 (2d Cir.1990) (quoting In re Johns-Manville Corp., 824 F.2d 176, 179 (2d Cir.1987), and In re Saco Local Development Corp., 711 F.2d 441, 444 (1st Cir.1983) (emphasis therein)). By “disputes” we do not mean merely competing contentions with respect to separable issues; rather, we apply the same standards of finality that we apply to an appeal under 28 U.S.C. § 1291. See In re Sonnax Industries, Inc., 907 F.2d at 1283. Given the strong federal policy against piecemeal appeals, see, e.g., Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980); Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956), a “dispute,” for appealability purposes in the bankruptcy context, means at least an entire claim on which relief may be *776 granted. Thus, with respect to a meritorious claim for damages, the dispute is not completely resolved until the bankruptcy court determines the amount of damages to be awarded.
In sum, for a bankruptcy court order to be final within the meaning of § 158(d), the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief. Accord Matter of Morrell, 880 F.2d 855 (5th Cir.1989) (bankruptcy court order finding a creditor liable for violating the automatic stay but not determining damages due under § 362(h) is not a final order); In re Brown, 803 F.2d 120 (3d Cir.1986) (district court order finding that defendant had violated the automatic stay and remanding to the bankruptcy court for a determination of damages under § 362(h) is not a final order); see also Matter of Behrens, 900 F.2d 97 (7th Cir.1990) (bankruptcy court order finding a judgment creditor in contempt of the discharge order but not calculating damages is not a final order); In re County Management, Inc., 788 F.2d 311 (5th Cir.1986) (district court order remanding to the bankruptcy court for an accounting is not a final order).
The 1990 Bankruptcy Court Order in the present case does not meet this standard of finality. It did not finally dispose of the dispute between Trustee/Metromedia on the one hand and the Fugazy Parties on the other. Only when the accounting has been completed, and it is thereby determined what damages are due the Trustee and Metromedia, will the bankruptcy court have conclusively determined this separable dispute. Accordingly, though the district court had the authority to grant the Fugazy Parties leave to appeal to the district court from the bankruptcy court’s interlocutory Order, the order of the district court affirming that Order was itself nonfinal within the meaning of § 158(d).
2. The Automatic-Stay Argument
This Court has ruled that a bankruptcy court’s denial of relief from an automatic stay in bankruptcy is a final order appeal-able under 28 U.S.C. § 1291 because it is the equivalent of a permanent injunction. See, e.g., In re Sonnax Industries, Inc., 907 F.2d at 1284-85; In re Chateaugay Corp., 880 F.2d at 1511-13; In re Taddeo, 685 F.2d 24, 26 n. 4 (2d Cir.1982) (“An order granting a permanent injunction is a final order____ Congress manifestly intended to treat final denial of relief from the automatic stay as a final order.” (emphasis in original)). Invoking these authorities, the Fugazy Parties argue that the 1990 Bankruptcy Court Order was a final order because it was, in effect, a denial of relief from the automatic stay. This contention borders on the frivolous.
Section 362 of the Code operates, immediately upon a debtor’s filing of a bankruptcy petition, to, inter alia, stay automatically any act to transfer control over property of the estate. 11 U.S.C. § 362(a)(3). Unless lifted by the court, the stay remains in effect until the case is concluded. See id. § 362(c). The Code sets forth the proper procedures to be followed by a person who desires relief from the automatic stay. Section 362(d) provides in pertinent part that the court shall grant relief from the stay in appropriate circumstances “[o]n request of a party in interest and after notice and a hearing.” See also id. § 362(f) (court may grant relief from the stay without holding a hearing if such relief is “necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing”).
Nothing in the Code suggests that a party is entitled to engage in “self-help” in derogation of the automatic stay. See In re Computer Communications, Inc., 824 F.2d 725, 731 (9th Cir.1987) (“Judicial toleration of an alternative procedure of self-help and post hoc justification would defeat the purpose of the automatic stay.”). Only the court may lift the stay. Conduct that bypasses the bankruptcy court and violates the automatic stay is plainly not the equivalent of a motion asking the court to lift the stay; and a subsequent ruling by *777 the bankruptcy court that conduct bypassing the court was impermissible is, equally plainly, not a ruling on a motion to lift the stay.
In the present case, none of the Fugazy Parties moved in the bankruptcy court for a lifting of the automatic stay prior to William Fugazy’s January 1987 transfer of the KXY License to Limousine and Roy. Nor did they inform the court of the transfer. The court did not learn of it until several months after it had occurred, and then only because the Trustee attempted to sell the License.
We find it difficult even to take seriously the Fugazy Parties’ suggestion on this appeal that their March 1989 motions for summary judgment should be construed as requests for relief from the automatic stay. First, their motions were not made until more than two years after the surreptitious transfer of the License. Second, these motions were made six months after the bankruptcy court had expressly declared the transfer null and void. Further, the order invalidating the transfer had been entered on the consent of William, and after proceedings in which Roy and Limousine had participated. It is hardly surprising, therefore, that in March 1989, the Fugazy Parties did not describe their summary judgment motions as requests for a lifting of the stay. In any event, even had the motions been so described, such a characterization would have been ineffective, given the requirement that a motion for the lifting of the stay, except in circumstances not present here, must be made prior to the purported transfer of the bankrupt’s property.
B. Appealability Under § 1292
Section 1292 of 28 U.S.C. provides for review in the courts of appeals over certain interlocutory orders and decrees of the district courts. This provision also extends to district court orders in bankruptcy proceedings, so long as the conditions imposed by § 1292 are met. Connecticut National Bank v. Germain, — U.S. at —, 112 S.Ct. at 1150. Subsection (a)(1) of § 1292, the only subsection that could arguably support appealability here, provides for review of interlocutory injunctions. It states, in pertinent part, that “the courts of appeals shall have jurisdiction of appeals from ... [ijnterlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions____” 28 U.S.C. § 1292(a)(1). We conclude that none of the conditions specified by this section is applicable to the case at hand.
Plainly the 1990 Bankruptcy Court Order did not grant or modify an injunction; nor did it refuse an injunction or dissolve an injunction. For the reasons stated in Part II.A.2. above, the 1990 Bankruptcy Court Order also did not refuse to dissolve or to modify an injunction, for there was no request for such relief, timely or otherwise.
Nor do we think it can fairly be said that the Order “continu[ed]” an injunction as that term is used in § 1292(a)(1). Given the Congressional policy disfavoring piecemeal appeals, provisions such as § 1292 authorizing “ ‘appeals from interlocutory orders [should] be strictly limited to the unusual situations wherein such appeals are expressly authorized.’ ” Sierra Club v. Marsh, 907 F.2d 210, 214 (1st Cir.1990) (quoting St. Louis Shipbuilding & Steel Co. v. Petroleum Barge Co., 249 F.2d 905, 907 (8th Cir.1957)). An order that “continu[es]” an injunction is one that “extends the duration of the injunction,” 16 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3924, at 84 (Supp.1992), that is, one entered in circumstances where, “ ‘without such order, the injunction would stand dissolved by lapse of the time fixed in the original order.’ ” Sierra Club v. Marsh, 907 F.2d at 213 (quoting Dreutzer v. Frankfort Land Co., 65 F. 642, 644 (6th Cir.1895)). Thus, “to be classified as an ‘order[ ] ... continuing’ an injunction, a ruling must have a direct and demonstrable effect on the duration of a previously-issued injunction. In other words, the later order must extend or prolong the restraint.” Sierra Club v. Marsh, 907 F.2d at 213.
*778 The 1990 Bankruptcy Court Order had no temporal impact on the automatic stay. The Order recognized the existence of the automatic stay, but did not extend its duration. The stay remained in effect simply because § 362(c) required its continuation for the duration of the bankruptcy proceeding.
In sum, the 1990 Bankruptcy Court Order was not an order of the type that § 1292(a) makes immediately appealable.
CONCLUSION
Having examined the possible bases for appellate jurisdiction and found none applicable to the present case, we dismiss the appeal for lack of appellate jurisdiction.