3 F.3d 49
 24 Bankr.Ct.Dec. 978, Bankr. L. Rep. P 75,406
 In re INTEGRATED RESOURCES, INC., also doing business as IRI
Services, Inc., Debtor.
The OFFICIAL COMMITTEE OF SUBORDINATED BONDHOLDERS, Appellant,
v.
INTEGRATED RESOURCES, INC., Bankers Trust New York
Corporation, Appellees.
 No. 1151, Docket 92-5086.
 United States Court of Appeals,
Second Circuit.
 Argued March 10, 1993.
Decided Aug. 13, 1993.
 
 Martin S. Siegel, New York City (Edward S. Weisfelner, Carole L. Fern, John P. Biedermann, Berlack, Israels & Liberman, of counsel), for appellant.
 Thomas J. Moloney, New York City (Shari Siegel, Cleary, Gottlieb, Steen & Hamilton, of counsel), for appellee Bankers Trust New York Corp.
 Brian E. O'Connor, New York City (Myron Trepper, Daniel J. Aaron, Willkie Farr & Gallagher, of counsel), for appellee Integrated Resources, Inc.
 Before: CARDAMONE and MAHONEY, Circuit Judges, and KEENAN,* District Judge.
 MAHONEY, Circuit Judge:
 
 
 1
 The Official Committee of Subordinated Bondholders (the "Committee") appeals from a judgment entered on November 24, 1992 in the United States District Court for the Southern District of New York, Michael B. Mukasey, Judge, that affirmed an order entered November 27, 1991 in the United States Bankruptcy Court for the Southern District of New York, Cornelius Blackshear, Bankruptcy Judge. The appealed orders approved, as modified, an expense reimbursement and breakup fee arrangement entered into between appellees Bankers Trust New York Corporation ("Bankers Trust") and Integrated Resources, Inc. ("Integrated") in connection with a proposal by Bankers Trust to fund Integrated's bankruptcy reorganization.
 
 
 2
 Because the order from which the Committee appeals is not "final" within the meaning of 28 U.S.C. Sec. 158(d) (1988),[1] the appeal is dismissed for lack of appellate jurisdiction.
 
 Background
 
 3
 This appeal arises out of Integrated's ongoing Chapter 11 bankruptcy proceedings. In view of our determination to dismiss, we provide only a brief description of the underlying events.
 
 
 4
 On February 13, 1990, Integrated filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. Integrated thereafter considered the alternatives of an internally funded plan of reorganization and a plan funded by third parties. In an attempt to locate outside funding, Integrated contacted numerous third parties with whom, if substantial interest was expressed, it entered into confidentiality agreements to permit potential sources of funding to conduct due diligence regarding Integrated.
 
 
 5
 By the fall of 1991, Integrated considered its negotiations with Bankers Trust to be the most advanced compared to those with other interested parties. After further negotiations and completion of its initial investigation, Bankers Trust submitted a letter of intent dated November 8, 1991 (the "Letter of Intent") that outlined the terms of a proposed funding by Bankers Trust of Integrated's reorganization. Bankers Trust advised Integrated that it would not proceed further with a funding effort unless the Letter of Intent was accepted by Integrated.
 
 
 6
 Integrated, together with committees representing senior and bank creditors in the Integrated reorganization proceeding (the "Senior Committees"), acceded to Bankers Trust's request and agreed to the Letter of Intent. The Letter of Intent provided, inter alia, that Bankers Trust would receive reimbursement of up to $1,500,000 for expenses incurred in connection with its business review of Integrated and development of the proposal tendered in the Letter of Intent. The Letter of Intent also required Integrated to pay Bankers Trust a breakup fee ranging from $500,000 to $9,000,000 in the event that a refunding pursuant to the Letter of Intent was not ultimately consummated for any reason other than a material breach or abandonment of the Letter of Intent by Bankers Trust, or its failure to obtain necessary regulatory approvals.
 
 
 7
 The amount of the breakup fee would depend upon the events that caused the refunding contemplated by the Letter of Intent not to occur and the future progress of the parties in achieving a definitive agreement. The Letter of Intent required approval of its compensation provisions by the bankruptcy court no later than November 25, 1991, and barred Integrated from entering into an alternative refunding transaction with any third party unless that transaction "shall have a value to the [Integrated Bankruptcy] estate that manifestly exceeds the value of the [Bankers Trust] offer by at least $20 million."[2]
 
 
 8
 On November 12, 1991, Integrated filed a motion seeking the bankruptcy court's approval of the compensation provisions of the Letter of Intent pursuant to 11 U.S.C. Secs. 105 and 363(b) (1988). The Committee objected, arguing, inter alia, that approval of the Letter of Intent by Integrated's board of directors was tainted by self-interest on the part of Integrated's senior management, and that any breakup fee was inappropriate in the absence of a definitive agreement.
 
 
 9
 On November 25, 1991, the bankruptcy court held a hearing on the compensation provisions of the Letter of Intent. After the hearing, which included expert testimony presented by the Committee concerning breakup fees in other transactions, the court withheld approval of the proposed fee because it "ha[d] a big problem with the breakup fee of $9 million, ... [which was] not even contingent upon a definitive agreement being entered into." The parties to the Letter of Intent then agreed to modify the breakup fee provisions so as to be more in keeping with prevailing industry standards, with a revised maximum fee of six million dollars and comparable reductions in most of the other fee amounts. The court approved the modification, and retained jurisdiction "over any matters related to or arising from the implementation of" the order approving the compensation provisions of the Letter of Intent.
 
 
 10
 In a subsequent written decision detailing the basis for its ruling, the bankruptcy court explained that "the business judgment of the Debtor is the standard applied under the law in this district," and that the Committee had failed to establish its "allegations of a 'sweetheart deal' between Integrated management and Bankers Trust." In re Integrated Resources, Inc., 135 B.R. 746, 753 (Bankr.S.D.N.Y.), aff'd, 147 B.R. 650 (S.D.N.Y.1992). The court noted that not only had Integrated's board approved the Agreement, but the Agreement had been approved by the Senior Committees, which had a "historically acrimonious relationship" with Integrated. Id.
 
 
 11
 The Committee reiterated its objections to the breakup fee on appeal to the district court, but without avail. The district court observed that "[b]reak-up fee arrangements outside bankruptcy are presumptively valid under the business judgment rule." 147 B.R. at 657. The court then reviewed precedents in which breakup fees were at issue, and formulated the following test: "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage, bidding; (3) is the amount of the fee unreasonable relative to the proposed purchase price?" Id. Agreeing with the bankruptcy court that all these questions should be answered in the negative in this case, and rejecting the Committee's contention that breakup fees should not be allowed in the absence of a definitive agreement, the district court affirmed the order of the bankruptcy court. Id. at 657-64. This appeal followed.
 
 
 12
 It was made clear on appeal that that Bankers Trust is no longer pursuing a funding proposal with Integrated, the pertinent negotiations having terminated in January 1992. Furthermore, amplifying upon a footnote reference in Integrated's brief on appeal, Integrated and Bankers Trust stated at oral argument that there is an ongoing dispute regarding the amount of the breakup fee to which Bankers Trust is entitled pursuant to the Letter of Intent. Integrated contends that Bankers Trust is only entitled to $500,000, while Bankers Trust asserts that it should be paid $2,500,000. (The Committee continues to assert that the breakup fee provisions should not have been approved, and accordingly that Bankers Trust is not entitled to any fee.) In view of this situation, we raised the question of this court's appellate jurisdiction sua sponte, and requested that the parties submit supplemental letter briefs addressing that issue.
 
 Discussion
 
 13
 Although Integrated stated at oral argument that it "would have no objection if this court were to dismiss this appeal as being nonfinal," all the parties assert in their letter briefs that the district court order on appeal in this case is sufficiently final to invest this court with jurisdiction over this appeal. We disagree. Having reviewed the submissions of the parties, we conclude that the appeal must be dismissed for want of appellate jurisdiction because it is not taken from a "final ... order[ ]" within the meaning of Sec. 158(d). Our recent opinion in In re Fugazy Express, Inc. (Shimer v. Fugazy), 982 F.2d 769, 774-76 (2d Cir.1992), is dispositive of the question.
 
 
 14
 In Fugazy, the trustee of a Chapter 7 corporate debtor achieved a bankruptcy court determination that an officer of the corporation and an accomplice had effected an invalid postpetition transfer of a corporate asset. The bankruptcy court directed an accounting to determine damages. An appeal was taken to the district court on the issue of liability. The district court affirmed. We dismissed the ensuing appeal to this court on the issue of liability on the ground, inter alia, that it was not taken from a final ruling within the meaning of Sec. 158(d). See 982 F.2d at 774-76.
 
 
 15
 Fugazy recognized, as the letter briefs of the parties in this case stress, that because bankruptcy proceedings are often prolonged and involve the resolution of separable discrete claims, appeals may be taken in bankruptcy cases from orders that finally dispose of discrete disputes. See id. at 775 (collecting cases). We immediately added, however, the following explanation:
 
 
 16
 By "disputes" we do not mean merely competing contentions with respect to separable issues; rather, we apply the same standards of finality that we apply to an appeal under 28 U.S.C. Sec. 1291. See In re Sonnax Industries, Inc., 907 F.2d [1280,] 1283 [2d Cir.1990]. Given the strong federal policy against piecemeal appeals, see e.g., Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980); Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956), a "dispute," for appealability purposes in the bankruptcy context, means at least an entire claim on which relief may be granted. Thus, with respect to a meritorious claim for damages, the dispute is not completely resolved until the bankruptcy court determines the amount of damages to be awarded.
 
 
 17
 In sum, for a bankruptcy court order to be final within the meaning of Sec. 158(d), the order need not resolve all of the issues raised by the bankruptcy; but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief. Accord Matter of Morrell, 880 F.2d 855 (5th Cir.1989) (bankruptcy court order finding a creditor liable for violating the automatic stay but not determining damages due under Sec. 362(h) is not a final order); In re Brown, 803 F.2d 120 (3d Cir.1986) (district court order finding that defendant had violated the automatic stay and remanding to the bankruptcy court for a determination of damages under Sec. 362(h) is not a final order); see also Matter of Behrens, 900 F.2d 97 (7th Cir.1990) (bankruptcy court order finding a judgment creditor in contempt of the discharge order but not calculating damages is not a final order); In re County Management, Inc., 788 F.2d 311 (5th Cir.1986) (district court order remanding to the bankruptcy court for an accounting is not a final order).
 
 
 18
 The 1990 Bankruptcy Court Order in the present case does not meet this standard of finality. It did not finally dispose of the dispute between Trustee/Metromedia on the one hand and the Fugazy Parties on the other. Only when the accounting has been completed, and it is thereby determined what damages are due the Trustee and Metromedia, will the bankruptcy court have conclusively determined this separable dispute.
 
 
 19
 Id. at 775-76 (emphasis added).
 
 
 20
 It is a basic rule of finality that " 'only when nothing save ministerial tasks relating to computation of damages remains can a mere determination of liability be construed as a [28 U.S.C. Sec. 1291] "final decision." ' " Arp Films, Inc. v. Marvel Entertainment Group, Inc., 905 F.2d 687, 689 (2d Cir.1990) (per curiam) (quoting Caradelis v. Refineria Panama, S.A., 384 F.2d 589, 591 (5th Cir.1967)). It is certainly conceivable that an order approving an agreement for a breakup fee could satisfy this standard. The parties made clear at oral argument, however, that even assuming the validity of the compensation provisions of the Letter of Intent, Integrated Resources and Bankers Trust remain literally millions of dollars apart as to the amount owing to Bankers Trust thereunder. This situation is closely analogous to Arp Films, a case in which we dismissed the appeal for want of a final decision.
 
 
 21
 If, in an appropriate case, failure to resolve the validity of an agreement for a breakup fee would unacceptably hinder the progress of a bankruptcy proceeding, the parties could seek an interlocutory appeal to this court pursuant to Sec. 1292(b). See Fugazy, 982 F.2d at 774 (citing Connecticut Nat'l Bank v. Germain, --- U.S. ----, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). In the instant case, however, Bankers Trust had departed the bankruptcy scene months before the district court rendered its opinion, so it is unlikely that there would be any plausible basis for a Sec. 1292(b) certification of the issue addressed by that opinion.
 
 
 22
 The bankruptcy court explicitly retained jurisdiction "over any matters related to or arising from the implementation of" the order approving the compensation provisions of the Letter of Intent. Accordingly, the parties should proceed to a final determination by the bankruptcy court as to the breakup fee due to Bankers Trust (if any) under the Letter of Intent. This may result in an appropriate subsequent appeal to this court. Cf. ARP Films, Inc. v. Marvel Entertainment Group, Inc., 952 F.2d 643 (2d Cir.1991) (opinion on merits after remand and resolution of accounting issues).
 
 Conclusion
 
 23
 The appeal is dismissed. The parties shall bear their own costs.
 
 
 
 *
 The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 Section 158(d) provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) [district courts] and (b) [bankruptcy appellate panels] of this section."
 
 
 [2]
 In a modification of the Letter of Intent at the bankruptcy court hearing described infra, this amount was reduced from twenty to fifteen million dollars