POSNER, Circuit Judge.
 

 In 1974, Larry Dyche, who was then nine years old, lost part of his foot in a railroad accident. A few months later, the railroad —Chicago, Rock Island and Pacific Railroad Company — entered reorganization under the bankruptcy act. The federal district judge who was sitting as the reorganization court set a deadline of December 31, 1975, for filing claims against the railroad. The setting of a deadline, in advance of approval of the plan of reorganization, for filing claims, and the barring of claims filed beyond the deadline, is a familiar and sensible measure in a reorganization proceeding and was expressly authorized by 11 U.S.C. § 205(c)(7) (1975), in force at the time relevant to this case, and is currently authorized by Bankr.R. 3003(c)(3). It creates a mechanism by which the trustee in bankruptcy can estimate the potential liabilities of the bankrupt in advance of formulating a plan of reorganization. Since the size of those liabilities is highly material to the design of an intelligent plan, the benefits of the mechanism are undeniable.
 

 On September 30, 1975, the trustee, who had learned about the accident, mailed a proof of claim form to Dyche’s mother. No proof of claim was ever filed. In 1982 Dyche reached legal adulthood (18) and on January 16,1984, Dyche’s lawyer wrote the trustee that Dyche was asserting a claim against the railroad. The trustee replied on March 30 that such a claim would be denied as untimely. Dyche’s lawyer neither filed a claim nor applied to the reorganization court for permission to file a late claim. On June 1, all creditors having been paid in full, the Rock Island emerged from the reorganization a solvent entity under the name of Chicago Pacific Corporation. On September 17 Dyche filed a personal injury suit against the new corporation in a federal district court in Illinois under the diversity jurisdiction. The corporation asked the reorganization court to enjoin the suit, the court issued the injunction, and Dyche appeals.
 

 
 *1282
 
 The order of June 1, 1984, which closed out the reorganization, discharged all claims against the Rock Island—provided that claimants had had a reasonable opportunity to file their claims, and Dyche argues that he had not. He says that it was not enough for the trustee in bankruptcy to send a proof of claim form to his mother; the trustee should have asked the reorganization court to appoint a guardian
 
 ad litem
 
 to represent Dyche, since he was a minor at the time. He relies primarily on Fed.R.Civ.P. 17(c) (at the time of the mailing, the Federal Rules of Civil Procedure applied to railroad reorganizations). It provides: “The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.” The language is mandatory, but the mandate is limited to cases where a minor (or incompetent) is a party to a suit and is not represented. If he is a party and represented, the appointment of a guardian is not required, provided the representation is adequate,
 
 Roberts v. Ohio Casualty Ins. Co.,
 
 256 F.2d 35, 39 (5th Cir.1958), as it would normally be if the party was being represented by a parent as “next friend” and there was no conflict of interest between the party and his representative.
 

 Dyche was never a party to the reorganization. He was a potential litigant. Rule 17(c) does not impose on the federal courts a duty to appoint guardians for all potential litigants who may be incompetent by reason of youth or mental condition to represent themselves. Such a duty, which would enormously enlarge the responsibilities of those courts, cannot be inferred from the word “shall” in Rule 17(c), which so far as appears is limited to cases in which incompetent persons are actually parties to federal litigation.
 

 This is not to say that federal courts have no power to appoint guardians
 
 ad litem
 
 on behalf of potential parties; and in appropriate cases a power may become a duty. Thus we do not question the Third Circuit’s recent decision in
 
 In re Amatex Corp.,
 
 755 F.2d 1034, 1041-44 (3d Cir.1985), holding that a guardian
 
 ad litem
 
 should be appointed to represent future (at present unknown) sufferers from asbestosis, in a proceeding to reorganize in bankruptcy one of the manufacturers of asbestos. See also
 
 In re UNR Industries, Inc.,
 
 725 F.2d 1111, 1118-20 (7th Cir.1984);
 
 Hatch v. Riggs Nat’l Bank,
 
 361 F.2d 559, 565-66 (D.C.Cir.1966). If there were some reason to think that Dyche’s mother would not represent his interests adequately, the district court would, we may assume, be required (and certainly would be empowered) to appoint a guardian
 
 ad litem
 
 to represent him. But no such reason is suggested.
 

 [4] There is no greater merit to Dyche’s alternative argument that the reorganization court’s refusal to toll the deadline for filing claims during the minority of any potential claimant is so unreasonable that it is a denial of due process. If we were writing on a clean slate, we would be inclined to take the view that Dyche’s due process claim fails at the threshold, because he has not shown that he ever had a meritorious cause of action against the railroad. Not every accident gives rise to liability; Dyche has yet to present any evidence that this one did. If he has no cause of action, it is hard to see in what sense he was deprived of liberty or property by not being allowed to file a claim. But this approach seems foreclosed by
 
 Logan v. Zimmerman Brush Co.,
 
 455 U.S. 422, 428-31, 102 S.Ct. 1148, 1153-55, 71 L.Ed.2d 265 (1982), which treats the cause of action itself as property within the meaning of the Constitution’s due process clauses, without inquiry into the validity of the cause of action.
 

 Nevertheless Dyche’s constitutional argument fails, because there was no denial of due process. Granted, for the government to create a right of action but then erect an insuperable barrier to its being vindicated by a particular class of claimants, such as minors, might in some circumstances be so unreasonable as to raise questions of due process—but not in the
 
 *1283
 
 circumstances of this case. Dyche is content with a rule that requires the minor to sue during his minority, provided only that the court appoints a guardian
 
 ad litem,',
 
 and we think the parent who has custody of the minor (Dyche’s mother, in this case — she was either divorced from his father or widowed, the record does not show which, but in any event she had remarried and had custody of Dyche) is a constitutionally adequate substitute, so long as there is no showing of a conflict of interest. Furthermore, there is an escape hatch in the rule. The reorganization court has, as we shall see, the power to forgive a late claim, and this escape hatch, while not open here for reasons to be explained later, is sufficient in our view to quell any constitutional objection to the absence of a formal tolling provision.
 

 Our conclusion that the reorganization court was not required to appoint a guardian for Dyche or ignore the deadline set by the trustee does not necessarily conclude the case against Dyche. If the trustee in bankruptcy failed to take proper steps to notify Dyche of the existence of the December 31, 1975, deadline for filing claims, the trustee might be estopped to rely on Dyche’s failure to file a timely claim as a basis for enjoining Dyche’s suit. But that is a separate question from whether the reorganization court should have appointed a guardian for a nonparty, and we hold that it had no duty to do so in the circumstances as they were known to the court.
 

 Regarding the trustee’s duty of notice, we do not think he was obliged in the circumstances to do more than he did — mail a proof of claim form to Dyche’s mother. This was actual notice, not “constructive” notice, as by publication — which usually means, no notice in fact. Actual notice to a minor’s parent is sufficient in the absence of circumstances suggesting otherwise. Dyche concedes that his mother received the letter and received it well before the December 31 deadline and does not argue either that the form is unclear or that any conflict of interest prevented his mother from representing his interests adequately. The record is silent on why his mother did not file a claim. It may be that by failing to follow up, the trustee took the risk that if the form never arrived or if the mother had a conflict of interest he would not be able to enforce the deadline against Dyche; but that is different from saying that he cannot enforce the deadline merely because he did not follow up. It was not his duty to write or call her again, to urge her to sue him. She may not have thought her son had a valid claim; she may have thought a legal proceeding would be traumatic for him; she may for all we know have been advised by a lawyer not to sue. Whatever the reason, it cannot be assumed in the absence of evidence to be the trustee’s fault.
 

 Nor do we think the trustee was at fault in failing to notify Dyche of the impending conclusion of the reorganization and the discharge of unfiled claims. It is true that
 
 creditors
 
 are entitled to actual notice of an impending discharge and are entitled to it even if they have knowledge of the bankruptcy proceeding.
 
 City of New York v. New York, New Haven & Hartford R.R.,
 
 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953);
 
 Reliable Elec. Co. v. Olson Construction Co.,
 
 726 F.2d 620, 622 (10th Cir.1984). And the term “creditor” in bankruptcy law is sufficiently broad to include a potential creditor, which was Dyche’s status when his mother was sent the proof of claim form. But a trustee has no duty to give notice to creditors who he reasonably believes have abandoned their claims,
 
 In re Chicago Pacific Corp.,
 
 773 F.2d 909, 916-17 (7th Cir.1985) —to noncreditors, in other words — and that is an exact description of this case. The trustee had notified Dyche’s mother of the deadline, she had not filed by the deadline, and there was (so far as the record shows) no indication that she was not acting in her son’s best interests. In these circumstances the trustee was entitled to conclude that a responsible and binding decision against filing a claim had been made. Dyche’s claim was therefore barred from December 31,1975, the deadline for filing claims; and no notice was due him thereafter. Maybe if the trustee knew that Dyche had a valid
 
 *1284
 
 claim he should have inferred that Dyche’s mother was not representing his interests when she failed to file a claim. But as we said earlier there is nothing in the record on the strength of the claim, and the burden of proof is on Dyche. The accident report on the basis of which the trustee mailed the claim form to Dyche’s mother is not even in the record.
 

 We also agree with the district judge that Dyche was guilty of laches, which is to say unreasonable delay. Dyche came of age on October 6, 1982; he brought suit against Chicago Pacific Corporation on September 17, 1984 — two years later. He never sought leave of the reorganization court to file a late claim. No later than March 30, 1984, Dyche’s lawyer knew that Dyche’s claim had been time-barred since December 31, 1975, eight years earlier. It behooved him to ask for leave to file a late claim just as soon as possible. This would not have been a futile gesture; one of the equitable powers of the reorganization court is to relieve a claimant from the consequences of having missed the deadline in filing the claim. See the authoritative dictum in
 
 Meyer v. Fleming,
 
 327 U.S. 161, 169 n. 18, 66 S.Ct. 382, 387 n. 18, 90 L.Ed. 595 (1946);
 
 In re Gulfco Investment Corp.,
 
 593 F.2d 933, 934-35 (10th Cir.1979); 11 U.S.C. § 205(c)(7) (1975); Bankr.R. 8-401(b)(3)(C) (1976); Bankr.R. 3003(c)(3) (1983); Bankr.R. 9006(b) (1983). Dyche has yet to ask for such leave.
 

 It is true that the cases involving the application of laches to creditors who try to file time-barred claims both suggest a disposition to bend over backwards in allowing claims to be filed and contain overtones of concern with a possible denial of due process if laches were applied too freely in such cases. See, e.g.,
 
 In re Standard Metals Corp.,
 
 48 B.R. 778, 786-89 (D.Colo.1985). But these are cases where the creditor really had a substantively valid claim of which he was being deprived by the enforcement of the deadline. Dyche, as we have been at pains to stress, never has shown that he had a good (though untimely) claim. He has done no more than attach the complaint in his diversity suit. Although there is no contention that the complaint fails to state a claim on which relief could be granted, neither is there any suggestion that the claim is factually supported or supportable. Dyche’s omission to show that he probably has a good claim may not defeat his argument that the procedure followed by the court violated his constitutional rights, but it is certainly material to the reasonableness of the judge’s refusing to relieve him from the consequences of a valid deadline.
 

 The case is distressing from a human standpoint because Dyche may have a valid tort claim and Chicago Pacific is a solvent firm, and because if the Rock Island had never declared bankruptcy Dyche’s suit would have been timely because filed within the applicable statute of limitations (which was tolled during his minority). But valid deadlines for filing claims — deadlines that serve as we have said an important purpose in facilitating reorganizations in bankruptcy — are not automatically waived just because the deadlines are short and the bankrupt emerges with some assets from the bankruptcy; and dilatory efforts to resurrect time-barred claims do not compel judicial lenity.
 

 Affirmed.