In re R.H. MACY & CO., INC., et al., Debtors.

Bankruptcy No. 92 B 40477 (BRL).

United States Bankruptcy Court, S.D. New York.

Nov. 30, 1993.

Weil, Gotshal & Manges, New York City, for debtors.

Otterbourg Steindler, Houston & Rosen, P.C., New York City, for Official Committee of Unsecured Creditors.

Berlack, Israels & Liberman, New York City, for Official Committee of Bondholders.

Louis Venezia, New York City, for Bryant Falzon.

Bosco, Bisignano & Mascolo, Staten Island, NY, for Patrick Sellitti.

Smith Mullin, West Orange, NJ, for Jeremy Tucker.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, P.C., Roseland, NJ, for Carol & Stanley Zajac.

## AMENDED AND RESTATED EXTRACT OF BENCH RULING ON MOTIONS TO EXTEND BAR DATE

BURTON R. LIFLAND, Chief Judge.

Before the Court are four separate motions to extend the bar date pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1) ("Rule 9006(b)(1)") in certain of the chapter 11 cases of R.H. Macy & Co., Inc. and its subsidiaries (collectively, "the Debtors"). The Movants are Bryant Falzon, by his parents David and Miriam Falzon, Patrick Sellitti, Jeremy Tucker, and Carol and Stanley Zajac, respectively.[1] While each Movant predicates his or her request for relief upon facts and circumstances which are solely applicable to his or her motion, each seeks the identical form of relief. Thus, all four motions are addressed in this single ruling and Movants are either referred to as a group or, where applicable, individually by last name.

■ After a review of the context in which these motions have been made, the analysis begins with whether the Debtors gave adequate notice of the bar date, the date on or before which proofs of claim or interest must be filed, to each of the Movants. If the notice was adequate, the discussion will then turn to whether any Movant has established cause to extend the bar date. Fed. R.Bankr.P. 3003(c)(3). An extension is warranted if a Movant demonstrates that his or her failure to file a timely proof of claim was the result of excusable neglect. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* — U.S. —, — – —, 113 S.Ct. 1489, 1491–92, 123 L.Ed.2d 74 (1993); Fed. R.Bankr.P. 9006(b)(1); *see also National Union Fire Ins. Co. of Pittsburg v. Main (In re Main),* 157 B.R. 786, 791 (W.D.Pa.1992) (Application of the excusable neglect doctrine presupposes "that the creditor received timely and adequate notice of the proceedings.")

### I. Background

On January 27, 1992 and thereafter, the Debtors commenced their respective voluntary cases under chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 101–1330 (1993). *See In re R.H. Macy & Co., Inc.,* 152 B.R. 869, 870–71 (Bankr.S.D.N.Y.1993). In May 1992, the Debtors moved to modify the automatic stay with respect to proceedings involving adjudication of certain personal injury, property damage, products liability and other claims covered by the Debtors' insurance policy (the "Casualty Claims"). The Debtors are, in effect, self-insured for the first $500,-000 of each Casualty Claim. The Debtors asserted that lifting the automatic stay to allow casualty claimants to prosecute their claims only to judgment or settlement would lessen certain administrative burdens which necessarily attend a reorganization proceeding of this magnitude.[2] In addition, the Debtors requested the authority to imple-

---

1. Falzon and Sellitti initially moved, as discussed *infra,* in opposition to the Debtors' May 1993 motion to reinstate the automatic stay with respect to proceedings involving adjudication of certain personal injury, property damage, products liability and other claims covered by the Debtors' insurance policy (the "Casualty Claims") where the claimant had not filed a timely proof of claim in the Debtors' cases. As indicated during the June 1993 hearing on the motion to reimpose the automatic stay and the October 27, 1993 hearing on the instant motions, Falzon and Sellitti's motions are treated as motions to extend the bar date pursuant to Rule 9006(b)(1).

2. The Debtors' department and specialty stores collectively had gross sales in fiscal year 1992 of approximately $6.449 billion.

ment a settlement procedure pursuant to which the Debtors and their insurance carrier, Zurich Insurance Company, could settle and pay in full, without further application to the Court, those Casualty Claims compromised for less than $25,000 per claim. The Debtors' motion was granted by order dated June 8, 1992 (the "June 8 Order"). The June 8 Order did not state, nor in any way imply, that a casualty claimant need not timely file a proof of claim in the Debtors' cases.[3]

This Court established December 15, 1992 as the bar date in the Debtors' cases pursuant to an order dated October 14, 1992. *In re R.H. Macy & Co., Inc.*, 1993 WL 195408 *1 (Bankr.S.D.N.Y., May 12, 1993); *see* Fed. R.Bankr.P. 3003(c)(3). On October 21, 1992, the Poorman–Douglas Corporation, the Debtors' court-appointed claims-processing agent, mailed proof of claim packages to the Debtors' creditors. Each proof of claim package contained a court-approved proof of claim form which indicated how a particular creditor's claim was scheduled by the Debtors, including whether such claim was listed as disputed, contingent or unliquidated. The Debtors scheduled each of the Movants' respective claims as disputed and contingent claims valued at zero dollars.

Each proof of claim package included instructions which expressly stated that if the proof of claim form:

INDICATES THAT YOUR CLAIM IS "UNLIQUIDATED", "CONTINGENT" OR "DISPUTED" THEN YOU *MUST* FILE A PROOF OF CLAIM FORM AND ENSURE THAT IT IS *RECEIVED* AT THE APPROPRIATE DESTINATION (DESCRIBED BELOW) ON OR BEFORE 5:00 PM EASTERN STANDARD TIME ON THE BAR DATE, DECEMBER 15, 1992 FOR YOUR CLAIM TO BE CONSIDERED TIMELY FILED IN THESE CHAPTER 11 CASES[.]

Instructions enclosed in October 21, 1992 Proof of Claim Package at 1 (emphasis and capitalization in original). The proof of claim package also contained a "Notice of Entry of

Bar Order Fixing Last Day to File Proofs of Claim Against Debtors" which provided that:

> *PLEASE TAKE FURTHER NOTICE THAT if you are required to file a proof of claim and fail to do so in the manner prescribed above, you will be forever barred from voting upon, or receiving a distribution under, any plan or plans of reorganization of any of the Debtors and will be forever barred from asserting any such claim against any of the Debtors or their successors or assigns[.]*

Notice of Entry of Bar Order at 1 (emphasis in original). *See also* 11 U.S.C. § 1111(a); Fed.R.Bankr.P. 3003(c)(2). No Movant had filed a proof of claim prior to the October 27, 1993 hearing date on these motions.

In May 1993, the Debtors moved to reimpose the automatic stay with respect to proceedings involving adjudication of Casualty Claims where the casualty claimant had not filed a timely proof of claim in the Debtors' cases. The Debtors asserted that it was futile for those casualty claimants to continue litigating because failure to file a timely proof of claim meant that a claimant could not receive a distribution under any plan of reorganization. The Debtors also stressed that absent the reimposition of the stay, the Debtors would needlessly expend their estates' resources defending against claims which were not eligible for any distribution under a plan of reorganization. *See* Fed. R.Bankr.P. 3003(c)(2); Notice of Entry of Bar Order at 2. Several casualty claimants, including Falzon and Sellitti, objected to the reimposition of the automatic stay. The Debtors' motion to reimpose the stay was granted by order dated June 30, 1993, and objections to that motion have been treated as motions to extend the bar date pursuant to Rule 9006(b)(1). *Cf. In re Best Prod. Co., Inc.*, 140 B.R. 353, 357 (Bankr.S.D.N.Y.1992) ("After the passage of the bar date, the claimant cannot participate in the reorganization unless he establishes sufficient grounds for the failure to file a proof of claim.") (citing *Certified Class in Charter Sec. Litig.*

---

**3.** The June 8 Order only referred to filed proofs of claim in the following manner, "ORDERED, that upon the settlement in full of any Settlement Claim, any proof of claim filed by the holder of such settled claim shall be, and hereby is, deemed withdrawn with prejudice[.]" June 8 Order at 4.

*v. Charter Co. (In re Charter Co.),* 876 F.2d 866 (11th Cir.1989)).

*II. Adequacy of the Notice of Bar Date*

 *A. Notice to Known Creditors*

 Movants Sellitti and Tucker, respectively, assert that each did not receive any notice of the bar date and conclude that the Debtors did not provide the required notice. Known creditors, such as Sellitti and Tucker, must be afforded notice "reasonably calculated, under all the circumstances to apprise" them of the pendency of the bar date. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953). While the Second Circuit has recognized that the postal system is not one hundred percent reliable, the Supreme Court has "repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." *Tulsa Professional Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988); *Weigner v. City of New York,* 852 F.2d 646, 649–50 (2d Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989); *see also* Fed.R.Bank.P. 2002(a). Thus, the appropriate inquiry is whether the Debtors properly mailed notice of the bar date to known creditors. *Weigner,* 852 F.2d at 649; *Matter of Chicago, Rock Island & Pacific R.R. Co.,* 788 F.2d 1280, 1283 (7th Cir.1986).

 Mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the party to whom it has been addressed. *Hagner v. United States,* 285 U.S. 427, 430, 52 S.Ct. 417, 418–19, 76 L.Ed. 861 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in

usual time and was actually received by the person to whom it was addressed."); *Bratton v. The Yoder Co. (In re The Yoder Co.),* 758 F.2d 1114, 1118 (6th Cir.1985); *see also Randbre Corp. v. Ladney (In re Randbre Corp.),* 66 B.R. 482, 485 (Bankr.S.D.N.Y. 1986) ("Where an incorrect address is used the presumption of receipt does not arise."). The Debtor has established this presumption with respect to Movants Sellitti and Tucker by the affidavits submitted by Patricia Corbin, an employee of the Poorman–Douglas Corporation. Ms. Corbin has sworn that proof of claim packages were addressed to Tucker and Sellitti, respectively, and were properly deposited in the mail system on October 21, 1992. *See* Affidavits of Patricia Corbin, dated October 22, 1992, attached as Exhibit K to Debtors' Objection. Helen Allman, another Poorman–Douglas employee, has sworn that neither the Sellitti nor Tucker proof of claim packages were returned as undeliverable. *See* Affidavit of Helen Allman, dated October 22, 1993, attached to Debtors' Objection as Exhibit O. In addition, Carol Stone, the Debtors' in-house claims control manager has sworn that she has reviewed the proof of claim packages which were returned as undeliverable and that the package sent to Tucker was not among those returned. *See* Affidavit of Carol Stone, dated October 21, 1993, attached as Exhibit P to Debtors' Objection.

Tucker, a minor, asserts that he moved to a new address after October 1, 1992 and did not receive the proof of claim package at such address. The proof of claim package mailed on October 21, 1992 however, is presumed to have been forwarded to Tucker's new address pursuant to § 391 of the United States Post Office's Domestic Mail Manual. As previously noted, the proof of claim package sent to Tucker was not returned as undeliverable.[4] In view of the foregoing, the Debtors have established the presumption

---

4. On April 29, 1992 the Debtors mailed a "Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code and Meeting of Creditors" to Tucker at his pre-October 1, 1993 address. Tucker is deemed to have received this Notice of Commencement, which clearly and unambiguously stated that the Debtors had filed their respective chapter 11 petitions, pursuant to the

aforementioned presumption that mail which is properly addressed and deposited into the mail system is regularly received. Tucker's parents or his attorney were thus well positioned to inform the Debtors of Tucker's change of address but apparently chose not to do so. *See In re Nutri\*Bevco, Inc.,* 117 B.R. 771, 781 (Bankr. S.D.N.Y.1990); Fed.R.Bankr.P. 2002(g).

that the proof of claim packages were received by Sellitti and Tucker, respectively.

After reviewing Sellitti and Tucker's respective submissions, the Court concludes that neither Movant has rebutted this presumption. Although the Debtors concede that both Movants are proceeding in good faith, and no evidence having been adduced which suggests otherwise, each of the Movants' respective self-serving submissions asserting non-receipt of the proof of claim package and the enclosed Notice of Entry of Bar Order is insufficient to rebut the aforementioned presumption of receipt. *See In re Longardner & Assoc., Inc.,* 855 F.2d 455, 459 (7th Cir.1988), *cert. denied,* 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989); *Trump Taj Mahal Assoc. v. Alibraham (In re Trump Taj Mahal Assoc.),* 156 B.R. 928, 939 (Bankr.D.N.J.1993) ("If a party were permitted to defeat the presumption of receipt of notice resulting from the certificate of mailing by a simple affidavit to the contrary, the scheme of deadlines and bar dates under the Bankruptcy Code would become unraveled."); *Dependable Ins. Co. v. Horton (In re Horton),* 149 B.R. 49, 58 (Bankr. S.D.N.Y.1992) ("[T]he affidavits of Dependable's employees stand merely as general denials that Dependable received the Notice and are therefore insufficient to rebut the presumption of receipt."); *In re Cresta,* 40 B.R. 953, 955 (Bankr.E.D.Pa.1984); *American Family Ins. Group v. Gumieny (In re Gumieny),* 8 B.R. 602, 604 (Bankr.E.D.Wis. 1981); *but see also Yoder,* 758 F.2d at 1118; *Linder v. Trump's Castle Assoc.,* 155 B.R. 102, 105–07 (D.N.J.1993). Thus, in view of the foregoing, Movants Sellitti and Tucker are each deemed to have received notice of the bar date.

### B. Notice to Movant's Attorneys

■ Tucker asserts that his attorneys should have been served with the proof of claim package. As previously noted, known creditors are entitled to actual notice of the bar date, *City of New York,* 344 U.S. at 296, 73 S.Ct. at 301 and Federal Rule of Bankruptcy Procedure 2002(g) provides that a debtor shall send all notices directly to the creditor unless the creditor's agent directs otherwise in a request filed with the Bankruptcy Court. *In re Solvation, Inc.,* 48 B.R. 670, 673 (Bankr.D.Mass.1985). As Tucker's attorney did not file such request with this Court, the Debtors properly sent the proof of claim package and the enclosed Notice of Entry of Bar Date to Tucker at his parents' address. *Cf. Chicago, Rock Island,* 788 F.2d at 1283 (In Bankruptcy Act case, trustee provided proper notice of bar date to minor by mailing notice of deadline to minor's parent.); *Horton,* 149 B.R. at 59 ("There is no affirmative duty on the part of a debtor or his counsel to ascertain whether a creditor is represented by an attorney for purposes of assuring proper notice to creditors.").

### III. Excusable Neglect

■ The bar date "does not 'function merely as a procedural gauntlet,'" *First Fidelity, N.A. v. Hooker Inv., Inc., L.J. (In re Hooker Inv., Inc.),* 937 F.2d 833, 840 (2d Cir.1991). (quoting *United States v. Kolstad (In re Kolstad),* 928 F.2d 171, 173 (5th Cir. 1991)), but as "an integral component of the court's equitable power to restructure debtor-creditor relationships." *Best,* 140 B.R. at 356 (citations omitted). Adherence to the bar date furthers the policy of promptly reconciling claims against the estate, *see Tulsa Professional,* 485 U.S. at 490, 108 S.Ct. at 1347–48 (1988) (citing *United Savings Association of Texas v. Timbers of Inwood Forest Association, Ltd.,* 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988)), because it allows parties in interest to determine "the identity of those making claims against the estate and the general amount of the claims[.]" *Best,* 140 B.R. at 357 (citing *First Fidelity,* 937 F.2d at 840).

■ The bar date may be extended for cause, and Rule 9006(b)(1) empowers a bankruptcy court to "permit a late filing if the movant's failure to comply with an earlier deadline 'was the result of excusable neglect.'" *Pioneer,* —— U.S. at ————, 113 S.Ct. at 1491–92 (quoting Rule 9006(b)(1)). The burden of proving "excusable neglect" is on the creditor seeking to extend the bar date. *Nutri*Bevco,* 117 B.R. at 784; *Hasset v. Weissman (In re O.P.M. Leasing Serv., Inc.),* 35 B.R. 854, 864 (Bankr.

S.D.N.Y.1983), *aff'd in part, rev'd in other part*, 48 B.R. 824 (S.D.N.Y.1985). The determination of whether a Movant's failure to file a timely proof of claim "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, —— U.S. at ——, 113 S.Ct. at 1498. These circumstances include, but by no means are limited to:

1. The adequacy of the notice,

2. The danger of prejudice to the debtor,

3. The length of delay and its potential impact on judicial proceedings,

4. The reason for the delay, including whether it was within the reasonable control of the movant and the movant's sophistication, and

5. Whether the movant acted in good faith.

■ *See id.; Best*, 140 B.R. at 359; *see also In re Eagle–Picher Indus., Inc.*, 158 B.R. 713, 715 (Bankr.S.D.Ohio 1993) (*Pioneer* factors are "non-exclusive, non-formulaic guideposts").

Each Movant either admits receiving the proof of claim package and the enclosed Notice of Entry of Bar Order or has been deemed to have received such package and Notice. Unlike the notice of bar date at issue in *Pioneer*, the instructions and Notice of Entry enclosed in the proof of claim package clearly and unambiguously stated that the bar date was December 15, 1992 and set forth the consequences which would attend failure to file a timely proof of claim. *Cf. Eagle–Picher*, 158 B.R. at 716. The Debtors also provided the Movants with constructive notice of the bar date by publication of the Bar Date Notice on three separate days in several newspapers, including the national editions of *The New York Times* and *The Wall Street Journal*. Therefore this factor, namely the adequacy of the notice, weighs in the Debtors' favor.

The second factor, danger of prejudice to the Debtors, also weighs in Debtors' favor. As previously noted, the Debtors are self-insured for the first $500,000 of each Casualty Claim. *Cf. Best*, 140 B.R. at 359 (finding prejudice to debtor where personal injury claimant sought extension of bar date and debtor covered by insurance policy substantially similar to the Debtors' policy). Extending the bar date to allow any of the Movants to file a proof of claim could result in the depletion of assets which would otherwise be available for distribution to creditors who have filed timely proofs of claim. This factor therefore weighs in favor of the Debtors.

The length of delay and the impact of such delay on judicial proceedings also weigh in the Debtors' favor. As previously noted, no Movant had filed a proof of claim as of the October 27, 1993 hearing on the respective motions. The claims reconciliation process in these cases is now a mature one, as the Debtors have objected to certain proofs of claim by way of several separate omnibus motions. *Cf. R.H. Macy*, 1993 WL 195408 at *3 (Administration of claims in Debtors' cases not beyond the embryonic stage two weeks after passage of the bar date.)

Furthermore, the Debtors have established, through the affidavit of Patricia Corbin, that 814 late proofs of claim with stated claim amounts aggregating in excess of $133 million have been filed in these Debtors' cases. In a prior proceeding, Ms. Corbin swore by affidavit that 711 late claims with stated claim amounts aggregating in excess of $85 million had been filed. *See* Affidavit of Patricia Corbin, dated September 23, 1993, attached as Exhibit S to Debtors' Objection. Thus, it cannot be disputed that the number of creditors who are standing outside the floodgates, possibly lying in wait before moving for an extension of the bar date, continues to grow. A deluge of such motions, perhaps premised upon communications with the Debtors, the Debtors' personal injury counsel or insurance carrier would drain available judicial resources. As extending the bar date would have an adverse impact on the Debtors' and this Court's respective efforts to timely conclude the claims reconciliation process, this third factor weighs in the Debtors' favor.

Although there is no dispute that none of the Movants are sophisticated creditors, the fourth factor, namely, the reason for the delay in filing of proofs of claim, also weighs

in the Debtors' favor. Movants Tucker, Falzon and Zajac assert that the reason for the delay in filing their respective proofs of claims was that neither the Debtors' insurance carrier, nor the various attorneys representing the Debtors in settlement discussions or in proceedings involving adjudication of the Casualty Claims, advised these Movants of the December 15, 1992 bar date. In this fashion, these Movants seek to impose a more stringent standard for providing notice of the bar date than that required by due process, the Federal Rules of Bankruptcy Procedure and the aforementioned caselaw.

As previously noted, the Debtors have properly notified each Movant of the pendency of the bar date. Requiring each order, or formal or informal communication between attorneys, which relates to the claims reconciliation process to include information with respect to all aspects of such process, such as the bar date, is neither required nor practical. No Movant has adduced any persuasive evidence which tends to suggest, much less demonstrate, that the Debtors or their agents have mislead any Movant to not file a timely proof of claim. Furthermore, as previously noted, the June 8 Order lifting the automatic stay with respect to proceedings involving Casualty Claims neither stated nor implied that a casualty claimant need not file a proof of claim.

■■■ Movant Falzon asserts that he did not file a proof of claim because he believed that such submission would have resulted in the loss of his right to a jury trial with respect to the resolution of his personal injury claim. The Court need not pass upon the hypothetical question of whether Falzon would have waived his right to a jury trial if he had filed a proof of claim because the relevant analysis is whether his decision to not file a proof of claim is excusable.[5] The Second Circuit's discussion in *First Fidelity*, 937 F.2d 833, demonstrates that Falzon's decision to not file a proof of claim was well

within his control and that his failure to file such claim was not the result of excusable neglect. In *First Fidelity* the debtors commenced an adversary proceeding against the bank seeking, among other things, to recover certain alleged fraudulent conveyances and preferential payments allegedly made to the bank. *Id.* at 835. The bank did not file a proof of claim in that debtor's case, asserting that it did not want to lose "whatever right it may have had to a jury trial in the adversary proceeding against it." *Id.* at 838. The bank however, failed to demonstrate that the general rule established by *Lagenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990) (per curiam) and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), namely "that a creditor who invokes the bankruptcy court's equity jurisdiction to establish a claim against a debtor's estate is also subject to the procedures of equity in the determination of preference actions on behalf of the estate[,]" did not apply. *First Fidelity*, 937 F.2d at 838. The Second Circuit recognized that if a creditor wishes to share in the distribution of estate assets, "observance of a bar date clearly may be required even if it alters the method of fact-finding on the merits of the claim by limiting the availability of a jury trial." *Id.* at 840. Thus, a creditor is faced with a choice: to either file a proof of claim and subject oneself to the equitable jurisdiction of the bankruptcy court, thereby potentially limiting the availability of a jury trial, or not file a proof of claim and be barred from receiving any distribution of estate assets. To align himself with the distribution process, Falzon would have had to comply with the terms of the bar order by filing a proof of claim. While Falzon's failure to file a timely proof of claim resulted from an ill-conceived strategy, it does not amount to excusable neglect.

As no Movant has demonstrated that his or her failure to timely file a proof of claim

---

5. The Debtors however, devoted over eight pages of their Objection to a discussion of whether Falzon would have waived his right to a jury trial if he had filed a proof of claim in the Debtors' cases. The Debtors conclude that if Falzon had a right to a jury trial in the applicable nonbankruptcy forum he would not have waived such

right if he had timely filed a proof of claim. *See, e.g.,* 28 U.S.C. § 1411(a) ("[T]his chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.").

was due to any circumstances outside a Movant's control or that such failure was excusable in light of events within such Movant's control, this factor, notwithstanding the fact that each Movant is not a sophisticated creditor, weighs in the Debtors' favor.

There is no dispute that each Movant has acted in good faith and this factor weighs in each Movant's respective favor.

*IV. Conclusion*

In sum, only each Movant's good faith militates towards granting an extension of the bar date. The remaining factors, namely, the adequacy of the notice, the danger of prejudice to the debtor, the length of delay and the reason for the delay demonstrate that it would be inequitable, considering all relevant circumstances surrounding each Movants' respective failure, to extend the bar date. Therefore, in view of the foregoing, the motions to extend the bar date are denied.