In the Matter of MIDLAND MECHANI-CAL CONTRACTORS, INC.,
Debtor.

Richard D. ELLENBERG as Trustee of Midland Mechanical Contractors,
Inc., Plaintiff,

v.

BOARD OF REGENTS OF the UNIVERSITY SYSTEM OF GEORGIA d/b/a Georgia State University, Defendant.

Bankruptcy No. A93–62925–WHD.
Adv. No. 95–6067A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

April 16, 1996.

Michael J. Bowers, Attorney General, George P. Shingler, Deputy Attorney General, Jeffrey Davis, Assistant Attorney General, Atlanta, Georgia, for Defendant.

Richard D. Ellenberg, Tamara Miles Ogier, Ellenberg & Associates, P.C., Atlanta, Georgia, for Plaintiff.

## *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court in this matter is the Motion for Relief from Final Judgment of the Board of Regents of the University System of Georgia (hereinafter "the University"). Through this Motion, the University asks the Court to find that circumstances of excusable neglect require it to vacate its Orders dated January 11, and 31, 1996, wherein it granted summary judgment and awarded pre- and post-judgment interest to Richard D. Ellenberg as Trustee for Midland Mechanical Contractors, Inc. (hereinafter "the Trustee"). This matter constitutes a core proceeding within the subject matter jurisdiction of the Court, *see* 28 U.S.C. § 157(b)(2)(A) & (O), and it shall be disposed of in accordance with the following reasoning.

### DISCUSSION

At the root of the instant controversy lies an adversary proceeding, commenced by the Trustee to recover monies allegedly owed under the terms of a sprinkler installation contract between the University and Midland Mechanical Contractors, Inc. (hereinafter "the Debtor"). Acting in his capacity as representative of the Debtor's estate, the Trustee advanced a claim that the University owed the estate approximately $56,186.00, as well as pre- and post-judgment interest, for change orders and delays which he alleged to have been caused by the University's agents. As counsel for the University, State Attorney General Michael Bowers vigorously contested the school's liability for any such payments, a proposition which he based upon the terms of the parties' agreement as well as a variety of state and common law doctrines.

■ After several months of discovery, the matter ultimately came to be submitted for the Court's determination on cross motions for summary judgment. After affording each litigant a full opportunity to brief its position on each of the issues which had been raised, on January 11, 1996, the Court issued an Order wherein it found the University liable to the Debtor's estate for the payments in issue. On January 29, 1996, the Court amended its Order to include a provision dealing with the Trustee's entitlement to interest on its claim.[1]

---

1. Through this amendment, the Court took steps to correct a clerical oversight by which a provision dealing with the Trustee's entitlement to pre- and post-judgment interest had been excluded from the final draft of its January 11, 1996 Order. Apparently construing this amendment as the product of an oral motion by the Trustee, the University has presented an independent argument for its vacation, contending that it should be set aside because it had neither notice nor an opportunity to present any opposition to its entry. Certainly, had the second Order come in response to its opponent's request, the University would have been entitled to notice and an opportunity to be heard. *See* FED.R.CIV.P. 60(a) (applicable in bankruptcy pursuant to FED.R.BANKR.P. 9024). Nevertheless, this amendment was made *sua sponte* rather than on the request of counsel. *See id.; see also Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1445 (9th Cir.1990) ("judge may properly invoke Rule 60(a) to make a judgment reflect the actual intentions and necessary implications of the court's decision"). Thus, when a representative of Trustee called the Court's law

■ Some two months after the entry of the Court's original Order, the University filed the instant Motion for Relief from Final Judgment, arguing that circumstances of "excusable neglect" should cause the Court to vacate each of its Orders in this case. The University acknowledges that both orders were received by the Office of Attorney General Bowers, its counsel in this case. Nevertheless, it contends that "several administrative and clerical errors,"[2] caused the staff of the Attorney General's office not to deliver either of the Orders to the assistant attorney who was handling the case for Mr. Bowers. As a result of these oversights, the University asserts that it "excusably neglected" to file an appeal and that, under the terms of Federal Rule of Civil Procedure 60(b), it should be granted relief from the underlying judgments. To that end, the University asks the Court to vacate its Orders dated January 11, and January 31, 1996, and then re-issue those Orders so as to allow it a second chance for appeal.

## I

■ Regarding the vacation of orders for cause, Federal Rule of Civil Procedure 60(b) contains the following provision:

On motion and upon such terms as are just, the court may relieve a party of or a

clerk to inquire as to the proper form in which to request such an amending provision, the law clerk properly informed the Trustee's representative that the Court already was aware of its oversight and that it would be amending its January 11th Order shortly, precluding any need for a motion, notice or further argument on the matter. While understandable, the University arguments to the contrary simply reflect a misconception of the character of the amendment.

2. In an attempt to provide explanation for its delay, the University argues that the Clerk's office failed to send its notice of judgment to the attention of Jeffrey Davis, the Assistant Attorney to whom a notation at the end of its pleadings had directed all communications be sent. As such, the University contends that its inaction owes itself in substantial part to the failure of the Clerk's office to mail a copy of the Orders directly to Mr. Davis. Mr. Davis, however, never filed a notice of appearance or a request for notices in this case. Nor did Michael Bowers, the attorney of record for the University, file with the Clerk's office any formal request that his address be changed in the distribution list. *See* FED.

party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the judgment.

\*     \*     \*     \*     \*     \*

FED.R.CIV.P. 60(b) (applicable in bankruptcy pursuant to Fed.R.Bankr.P. 9024). Broad as its terms may be, Rule 60(b) does "not give courts unlimited authority to fashion relief as they deem appropriate." *Schultz v. Commerce First Fin.*, 24 F.3d 1023, 1024 (8th Cir.1994). In particular, the Rule 60(b) mo-

R.BANKR.P. 2002(g) (providing that parties may make such a formal request of the Clerk's office). It offends both reason and the text of the Rules to suggest that simply by altering a legend at the end of their pleadings, parties may shift to the Court the burden of distributing incoming mail to whichever associate recently has begun to work upon a case. Quite simply, it is the job of the firm to keep up with which of its attorneys presently is handling a matter, not that of the Court. Absent the filing of an address change letter by Mr. Bowers or a notice of appearance and request for notices by Mr. Davis, the Clerk properly mailed a copy of the Orders in question to the attention of Attorney General Bowers. Notwithstanding the University's expectations to the contrary, the failure of the Clerk's office to mail a copy of the Orders to any attorney other than Mr. Bowers himself poses a non-issue for the purposes of the present inquiry. *See Pioneer Inv. Services v. Brunswick Assocs.*, 507 U.S. 380, 394–96, 113 S.Ct. 1489, 1497–99, 123 L.Ed.2d 74 (1993) (a party's ignorance of the procedural rules and consequent means by which they must conduct themselves does not constitute "excusable neglect").

tion should not be used as a substitute for a timely appeal. *See Latham v. Wells Fargo*, 987 F.2d 1199 (5th Cir.1993); CHARLES A. WRIGHT & ARTHUR R. MILLER, 11 FEDERAL PRACTICE & PROCEDURE § 2858 (citing *Edwards v. Velvac, Inc.*, 19 F.R.D. 504, 507 (D.Wis.1956)).

■ Making expressed provision for those litigants who might seek review of a bankruptcy court order, Bankruptcy Rule 8002 lays out a well defined schedule for the appeal of any final order to the district court or bankruptcy appellate panel. Rule 8002 also includes a specific mechanism[3] designed to accommodate those parties, such as the University, who fail to meet its standard ten-day appeal deadline as a consequence of some sort of excusable neglect. *See Redfield v. Continental Cas. Corp.*, 818 F.2d 596, 602 (7th Cir.1987) (failure to receive notice of a judgment's entry, if anything, should form the basis of a Rule 8002(c) motion). At the same time that it makes allowance for untimely appeals based upon a showing of "excusable neglect," however, Rule 8002 specifically states that in no event may the Court grant any such extension more than twenty days after the expiration of the appeals period. *See* FED.R.BANKR.P. 8002(c); *see also* FED.R.BANKR.P. 9006 (making broad allowance for extensions of time by a court, but reiterating that permission for untimely appeals based upon "excusable neglect" only may be made as provided by Rule 8002(c)). Thus, notwithstanding the degree of "excusable neglect" present, under the clear mandate of Rule 8002 the Court may not allow a litigant to file an untimely appeal more than twenty days after the expiration of the standard time period. FED.R.BANKR.P. 8002(c), 9006.

What the University now seeks is a circumvention of the aforementioned Rule. By calling upon Rule 60(b), the University would have the Court vacate its prior orders and re-issue them so as to restart the appeal period and, thereby, avoid the clear limita-

tions of the Rule 8002(c) system for appeals. Moreover, to justify this maneuver, the University would rely upon Rule 60(b)'s "excusable neglect" provisions, a standard requiring no more exigent circumstances than that which Rule 8002(c) sets out for cases actually meeting its time criteria. *Compare* FED. R.BANKR.P. 8002(c) (stating that a showing of "excusable neglect" may justify an untimely appeal but mandating that in no case may such leave be granted more than twenty days after the expiration of the standard ten days for appeal), *with* FED.R.CIV.P. 60(b) (employing the same "excusable neglect" standard as cause by which to grant relief from a judgment). In short, without mention of Rule 8002(c) and its explicit limitations, the University essentially contends that the more generalized mandate of Rule 60(b) should permit the pursuit of its untimely appeal at a point forbidden by Rule 8002(c), and that it need not succumb to any higher evidentiary standard in order to justify such an extraordinarily untimely motion.

Both common sense and statutory construction weigh heavily against the University's position. First, to accept its characterization of Rules 60(b) and 8002(c) would run contrary to the well-established preference of specific rules over general provisions. *See e.g., Varity Corp. v. Howe*, —— U.S. ——, ——, 116 S.Ct. 1065, 1077, 134 L.Ed.2d 130 (1996) (general provisions should not be interpreted in such a way as to undermine limitations created by a more specific provision). More importantly, the University's collective interpretation of the "excusable neglect" standards found in Rules 8002(c) and 60(b) effectively would wipe the qualifying time limitation of the former provision completely off of the books, a result clearly at odds with the intentions of that Rule's drafters. *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 288 (5th Cir.1985) ("Rule 60(b) simply may not be used as an end run to effect an appeal outside the specified time limits, otherwise those limits become essentially mean-

---

**3.** As previously noted, litigants always may appeal the final orders of a bankruptcy court to the district court or a bankruptcy appellate panel, provided that they do so within ten days after that order's entry. *See* 28 U.S.C. § 158(a), (c)(2); *see also* FED.R.BANKR.P. 8002. If a prospective

appellant neglects to file a notice of appeal within the requisite ten-day period, he nevertheless may petition the bankruptcy court for an additional twenty days in which to file such an appeal by demonstrating that his omission arose from "excusable neglect." *See* FED.R.BANKR.P. 8002(c).

ingless"). Given the resulting conflict with Rule 8002(c), the Court finds that it must view with circumspection the University's attempt to use Rule 60(b) to access the appeals process at this late stage in the proceeding.

Indeed, such a use of Rule 60(b) would appear uniquely impermissible where, as here, the prospective appellant bases his showing of excusable neglect solely upon his failure to receive notice of the underlying judgment's entry. In the course of mandating that the clerk serve a copy of each judgment upon the parties, Bankruptcy Rule 9022 specifically cautions that the, "[l]ack of notice of the [judgment's] entry does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as provided in Rule 8002." Fed.R.Bankr.P. 9002(a). As one court has noted:

> The Advisory Committee Note describes Rule 9022(a) as an adaptation of Fed. R.Civ.P. 77(d), which also requires the clerk to mail to the parties notice of an order or a judgment and which also provides that the clerk's failure to notify does not authorize courts to extend the time to appeal. And the Advisory Committee Note to Rule 77(d) explicitly cautions parties against relying upon the clerk to provide them with notice of judgments. Thus, many courts have held that the district courts lack authority to relieve parties who fail to take timely appeals because they never received notice of the entry of judgments. *See, e.g., Polylok Corp. v. Manning,* 793 F.2d 1318, 1320 (D.C.Cir.1986) (Rule 77(d) is "unconditional"); *Wilson v. Atwood Group,* 725 F.2d 255, 257 (5th Cir.) (en banc) (Rule 77(d) is "strict, but its meaning is plain. We have consistently held that the simple failure of the clerk to mail notice of the entry of the judgment, without more, does not permit relief to a party who has failed to appeal within the proscribed time"), *cert. dismissed* 468 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984). *Mennen Co. v. Gillette Co.,* 719 F.2d 568, 570 (2d Cir.1983).... Thus, in this case, we hold that the creditor's failure to receive notice of the entry of the order confirming the reorganization plan is not alone sufficient grounds for extending the time

to appeal that order beyond the constraints of Rule 8002(c).

*In re Longardner & Assoc.,* 855 F.2d 455, 463–64 (7th Cir.1988) (footnotes omitted). Given that the University bases its argument for "excusable neglect" merely upon a failure to learn of the judgment's entry, it would appear particularly inappropriate to read into the text of Rule 60(b) the avenue of relief upon which it now seeks to embark. *See id.; see also Ashby Enters. v. Weitzman, Dym & Assoc., Inc.,* 780 F.2d 1043 (D.C.Cir.1986); *Case v. BASF Wyandotte,* 737 F.2d 1034, 1035 (Fed.Cir.1984).

## II

Even were it to find that Rule 60(b) provides a means by which those parties who fail to receive notice of a judgment's entry may bypass the time limitations of Rule 8002(c), the Court concludes that the University could not carry its burden of establishing "excusable neglect" in this case. Properly conducted, a search for the presence of "excusable neglect" should encompass "all relevant circumstances surrounding the party's omission." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993); *Adv. Estimating Sys., Inc. v. Riney,* 77 F.3d 1322, 1324–25 (11th Cir.1996); *Tron & White v. Gottschalk (In re Gottschalk),* 1996 WL 83877, No. 95–55059 at *2 (9th Cir. Feb. 27, 1996). In particular, a court should focus its inquiry upon "the danger of prejudice to the [nonmovant], the length of the delay and its potential impact upon judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498. Where the totality of these considerations militates against any finding of excusable neglect, the Court must deny the relief sought. *Thompson v. E.I Dupont de Nemours & Co., Inc.,* 76 F.3d 530, 533–35 (4th Cir.1996).

Here, the University's ability to learn of the Court's having entered the Orders in question stood wholly within its own control. A copy of the Orders having been mailed to Attorney General Bowers' attention and re-

ceived by his office staff, the University's failure to timely file an appeal arose from nothing more than its own attorney's failure to act with a minimal degree of care. The Attorney General's office need not have resorted to reviewing the court's dockets in order to insure that it learned of these Orders' entry. Rather, all that the circumstances required was a reasonable effort to monitor those notices actually received by the Attorney General's office and to take some action to deliver them to the appropriate party.[4] Having failed to do so, the University should not be permitted now to claim the benefits of "excusable neglect." *Florida Physician's Insurance Co., Inc. v. Ehlers,* 8 F.3d 780, 784 (11th Cir.1993) ("failure to establish minimum procedural safeguards for determining that action is being taken does not constitute excusable neglect"); *North Central Illinois Laborer's District Council v. S.J. Groves & Sons Co., Inc.,* 842 F.2d 164, 167–68 (7th Cir.1988) (district court did not abuse discretion in refusing to set aside judgment when filing or clerical error resulted in the failure of in-house counsel to discover plaintiff's service of process); *Picucci v. Town of Kittery,* 101 F.R.D. 767 (D.Me.1984) (insufficiencies relating to the office procedures of counsel may not form the basis of "excusable neglect" under Rule 60(b)).

The nature and length of delay exhibited in this case also argue heavily against any finding of "excusable neglect" on the University's part. As previously noted, the University filed its present motion some two months after the entry of the Court's original Order. Moreover, it appears that even this untimely discovery would not have been made, but for a call from the Trustee's office to discuss enforcement of the judgment. In truth, one can only speculate how long the University would have taken to discover its negligence had another party not drawn the matter to its attention. Given the excessive nature of the University's delay and the apparent absence of any diligence on its part to monitor its own internal affairs, the Court cannot conclude that any element of "excusable neglect" exists in this case that might warrant the type of relief which currently is sought. *Davis v. Safeway Stores, Inc.,* 532 F.2d 489, 490 (5th Cir.1976) (denial of Rule 60(b) motion appropriate where three-week span of inactivity suggested "an absence of minimal internal procedural safeguards"); *Larsen Co. v. Consolidated Marketing, Inc.,* 148 F.R.D. 664, 666 (N.D.Ga.1993) (where counsel had ability to discover error immediately but did not do so until almost thirty days subsequent, his lack of diligence precluded any finding of "excusable neglect"). To the contrary, the Court finds that the degree of inattention demonstrated by the Office of the Attorney General in handling these Orders transcends to that level of bad faith proscribed by the Supreme Court in the course of rendering its *Pioneer* decision. *See Pioneer,* 507 U.S. at 395, 113 S.Ct. at 1498; *see also In re O.W. Hubbell & Sons, Inc.,* 180 B.R. 31, 35–36 (N.D.N.Y.1995) (when a litigant flagrantly and unreasonably fails to establish procedural safeguards to insure that pleadings are brought to the attention of counsel charged with handling the matter involved, its course of conduct may constitute "bad faith" so as to preclude any finding of excusable neglect).

Finally, the Court notes the manner in which this type of delay serves to prejudice the integrity of its own procedures. To find "excusable neglect" under these circumstances essentially would absolve litigants who do nothing upon receipt of a Court Order from the harmful effects of their flagrant disregard. More importantly, litigants would become empowered to unilaterally ex-

---

**4.** In this respect, the instant case stands clearly distinguishable from that of *Nunley v. City of Los Angeles,* 52 F.3d 792 (9th Cir.1995), wherein the court opined that "where non-receipt has been proven and no other party would be prejudiced, the denial of relief cannot rest upon a party's failure to learn independently of the entry of judgment during the ... period for filing notices of appeal." *Id.* at 798. First, rather than involving the predicament of a litigant who did not receive notice of the underlying judgment, the present case calls into question the conduct of a party who concedes that it received mail service of the Court's Order, yet contends that it failed to act upon that Order as a consequence of shortcomings in its own internal procedures. Second, unlike the *Nunley* litigant, who would have had to have undertaken an independent search of the court's dockets in order to discover the judgment's entry, the University only would have had to give proper attention to those Orders of which its counsel had a copy.

tend the appeals period from ten days to sixty simply by averring that, although received by their firm, the Order in question inexplicably failed to reach the hands of the associate charged with handling that matter. *See generally, In re R.H. Macy & Co.,* 161 B.R. 355, 360 (Bankr.S.D.N.Y.1993) (if affidavits containing only general denials of receipt of notice were allowed to validate deviation from time limitations, the entire bankruptcy process would become unravelled). As a consequence, such a ruling only would act to reward those parties who build a chinese wall of gross inattention or ignorance between themselves and the Court. Without doubt, it would dearly prejudice the interests of the Court not to demand a degree of attentiveness higher than that exhibited by the University in handling these particular Orders upon their receipt.[5]

### CONCLUSION

The Court having given the matter careful consideration, it is **ORDERED** that the "Motion for Relief from Final Judgment" of the Board of Regents of the University System of Georgia is **DENIED**.

**IT IS SO ORDERED.**

---

[5]. As it renders its decision, the Court remains mindful that, in the course of applying the *Pioneer* standard, the Eleventh Circuit has held that certain miscommunications inside the firm acting as legal counsel to a party may in fact give rise to "excusable neglect" within the meaning of Rule 60(b). *See Cheney v. Anchor Glass Container Corp.,* 71 F.3d 848 (11th Cir.1996). If anything, however, the reasoning of the *Cheney* court serves only to reinforce the distinguishable characteristics of the present case. Specifically, as justification for its finding of "excusable neglect," the *Cheney* court placed great emphasis upon the manner in which the inadvertences of counsel were mitigated by both demonstrated diligence and innocent circumstance. *Id.* at 850 (noting that each attorney involved harbored an innocently reasonable belief that the other was pursuing a motion to set aside and that their diligence in discovering their error had resulted in a total delay of only six days beyond the accepted time frame). In the present case, the attorneys representing the University demonstrated none of the innocent diligence exhibited by counsel in *Cheney,* a circumstance made clear by comparing the relative means and promptness with which each lawyer discovered his oversight.